**Terri MOLAND, Plaintiff,**

v.

**BIL–MAR FOODS, a division of Sara Lee Corporation, and Sara Lee Corporation, Defendants.**

**No. C 96–4023–MWB.**

United States District Court, N.D. Iowa, Western Division.

Feb. 13, 1998.

MEMORANDUM OPINION AND
ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1064

II. STANDARDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1065
 A. General Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . .1065
 B. Cautions In Employment Discrimination And Retaliation Cases . . . . . . . . .1065

III. FINDINGS OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1066
 A. Uncontested Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1066
 B. Contested Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1067

IV. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1067
 A. Employment Relationship Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1067
 B. Determination of Employee Status Under Title VII . . . . . . . . . . . . . . . . . . . .1068
 C. Application Of The Hybrid Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1069
 1. Bil–Mar's right to control and supervise Moland . . . . . . . . . . . . . . . . . .1070
 2. Other hybrid test factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1071
 D. Indirect Employee–Employer Relationship . . . . . . . . . . . . . . . . . . . . . . . . . .1071
 1. Sexual harassment claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1071
 a. Sibley line of authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1071
 b. The prompt remedial action requirement . . . . . . . . . . . . . . . . . . . . . .1074
 c. Bil–Mar's response to harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . .1074
 2. Retaliation claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1075

# 1064

 *E. Certification For Interlocutory Appeal* ................................ 1076

*V. CONCLUSION* ................................................................. 1078

In this employment discrimination lawsuit, the present motion for summary judgment raises what at first blush appears to be the straightforward issue of whether an employment relationship, a statutory requirement for an employment discrimination lawsuit brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* existed between plaintiff and defendants at the time plaintiff was assigned to work at a scale house on one of defendants' facilities. However, closer examination reveals that the critical issue before the court in this case is one which neither the Eighth Circuit Court of Appeals, nor any other federal court, has ever addressed in a published opinion and one which the Seventh Circuit Court of Appeals has left unanswered: "whether an employee of employer X may bring a Title VII action against employer Y when Y is not his employer, but merely someone whose discriminatory conduct interferes with his employment with employer X." *Alexander v. Rush North Shore Medical Ctr.,* 101 F.3d 487, 493–94 n. 2 (7th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 54, 139 L.Ed.2d 19 (1997).

## *I. INTRODUCTION AND BACKGROUND*

Plaintiff Terri Moland filed this sex discrimination lawsuit on March 4, 1996, against defendants Bil–Mar Foods and Sara Lee Corporation (collectively "Bil–Mar" unless otherwise indicated). Moland, an employee of IBP Corporation ("IBP"), had been assigned to work at Bil–Mar's scale house at its turkey processing plant in Storm Lake, Iowa. Moland worked at the scale house until February 22, 1995, when IBP complied with a request from Bil–Mar that IBP no longer assign her to Bil–Mar's scale house. Moland's complaint alleges that she was subjected to sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Moland also alleges that defendants retaliated against her for reporting sexual harassment in the workplace in violation of Title VII. Bil–Mar answered the complaint on April 16, 1996.

Bil–Mar has moved for summary judgment. In its motion, Bil–Mar asserts that there are no genuine issues of material fact and argues that no employment relationship existed between Moland and Bil–Mar. Accordingly, Bil–Mar asserts that Moland cannot invoke the protections found in Title VII. Moland filed a timely resistance to Bil–Mar's motion. In her resistance, Moland contends that she had an employment relationship with Bil–Mar sufficient to entitle her to bring suit under Title VII. Moland also contends that an indirect employment relationship is sufficient to bring Bil–Mar within the ambit of Title VII. After the parties had submitted their initial briefs, the court *sua sponte* invited the parties to submit further briefing on two issues: first, whether the line of authorities relied on by Moland applies with equal force to Moland's claim of sexual harassment, pursuant to 42 U.S.C. § 2000e–2(a)(1), as well as to her allegation that defendants retaliated against her for reporting sexual harassment in the workplace, in violation of 42 U.S.C. § 2000e–3(a), given the differences in the language found in those two sections; and second, whether Bil–Mar, when faced with actual or constructive knowledge of alleged sexually harassing conduct, took " 'prompt remedial action reasonably calculated to end the harassment.' " *Callanan v. Runyun,* 75 F.3d 1293, 1296 (8th Cir.1996) (quoting *Davis v. Tri–State Mack Distribs., Inc.,* 981 F.2d 340, 343 (8th Cir.1992)). Additionally, because Bil–Mar's motion raises several issues of first impression in this circuit, the court set the matter for oral argument.

The court held telephonic arguments on Bil–Mar's Motion For Summary Judgment on January 20, 1998. At the hearing, plaintiff Moland was represented by Steve Hamilton of Hamilton Law Firm, P.C., Storm Lake, Iowa. Defendants were represented by Margaret M. Prahl of Heidman, Redmond, Fredregill, Patterson, Plaza & Dykstra, L.L.P., Sioux City, Iowa.

The court turns first to the standards applicable to motions for summary judgment, then to a discussion of the undisputed facts as shown by the record and the parties'

submissions, and finally to its legal analysis of whether Bil–Mar is entitled to summary judgment on Moland's claims of sex discrimination and retaliation.

## II. STANDARDS FOR SUMMARY JUDGMENT

### A. General Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED.R.CIV.P. 56 in a number of recent decisions. *See, e.g., Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here.

Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. ... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990).

"An issue of material fact is genuine if it has a real basis in the [summary judgment] record." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 395.

### B. Cautions In Employment Discrimination And Retaliation Cases

When summary judgment is sought in an employment discrimination case, however, the Eighth Circuit Court of Appeals has viewed such motions with caution. The court has often stated that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1204 (8th Cir. 1997) (citing *Crawford* ); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford* ); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford* ); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford* ); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827 F.2d at 364). Consequently, summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where

there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir. 1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244).

Furthermore, this court has observed that motions for summary judgment in retaliation cases should be viewed with similar caution. Thus, in *Delashmutt v. Wis–Pak Plastics, Inc.,* 990 F.Supp. 689, 693 (N.D.Iowa 1998), this court wrote,

> These special cautions seem to the court to be no less applicable here to Delashmutt's retaliation ... claim[ ], because such claims also often depend upon inferences of the employer's motive, as is shown by application of the same burden-shifting analysis to retaliation claims as is used in discrimination cases[.] *[S]ee Moschetti v. Chicago, Central & Pacific R. Co.,* 119 F.3d 707, 709 (8th Cir.1997) ("The order and allocation of the burden of proof in [a retaliation case under 42 U.S.C. § 2000e–3(a) ] is laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)"); *accord Manning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997); *Jackson v. Delta Special Sch. Dist. No. 2,* 86 F.3d 1489, 1494 (8th Cir.1996)[.]

*Delashmutt,* 990 F.Supp. at 693. Therefore, the court will keep these cautions in mind when considering defendants' motion for summary judgment on Moland's retaliation claims as well.

Nonetheless, there are also limits to caution, because the Eighth Circuit Court of Appeals has said that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow,* 128 F.3d at 1204; *accord Helfter,* 115

F.3d at 615; *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995). Therefore, with these standards in mind, the court turns to consideration of defendants' motion for summary judgment.

## III. FINDINGS OF FACT

### A. Uncontested Facts

Plaintiff Moland was an employee of IBP and was assigned to work in Bil–Mar's scale house at its turkey processing plant in Storm Lake, Iowa. Moland was first assigned a permanent part-time position at the scale house in August 1994. Before getting the job in the scale house, Moland worked at IBP in a "sort/trim" position. Moland had to relinquish her rights in her sort/trim position in order to take the job at the scale house.

Moland's duties at the scale house required her to remain at the scale house in order to weigh trucks. Moland was to weigh every truck coming to or leaving the IBP plant. Although Moland's job at the scale house was to weigh only IBP trucks, she did weigh other trucks. Moland was directed by Bil–Mar employees to account for every weight ticket issued during her work shift. Moland determined that the best way to accomplish that requirement was to weigh every truck, regardless of ownership. Moland worked approximately thirty-two hours a week. Moland's shift was 2:00 p.m. to 10:00 p.m., Monday through Thursday. On an average shift, Moland weighed approximately 100 trucks. Moland reported to her supervisor at IBP, Sue Driver, when necessary. Moland trained a Bil–Mar employee, Susan Huseman, to perform the job requirements for the scale house position.

Bil–Mar's scale house is located entirely on the premises of Bil–Mar's turkey processing plant. Bil–Mar and IBP's operations are interrelated only to the extent that Bil–Mar has agreed to permit IBP to use Bil–Mar's scale house to weigh IBP trucks. Bil–Mar and IBP are separate and distinct companies. No common ownership or financial control of the two companies exists. There was and is no centralized control of IBP and Bil–Mar's labor.

Moland was assigned to work at the scale house during hours when it was not being used by Bil–Mar. During the second shift,

IBP sends its employees to handle the weighing duties because Bil–Mar has no staff in the scale house during most of the second shift. IBP employees are present in Bil–Mar's scale house from 2:30 p.m. to 10:30 p.m. No one specific Bil–Mar employee is assigned exclusively to the scale house. Instead, Bil–Mar has between eight and ten first shift employees who rotate through the scale house at different times during the first shift. These first shift employees' work days overlap slightly with the IBP employees assigned to the scale house. The Bil–Mar employees' work schedules would overlap with that of the IBP employees for between one and one-and-a-half hours each day. If Bil–Mar was not going to be open on a particular day, Bil–Mar would contact IBP and request that it assign an employee to Bil–Mar's scale house for that day. Moland was the only IBP employee present at the scale house during her shifts.

IBP paid Moland's wages. Bil–Mar did not pay Moland nor did it provide her with benefits. Moland was not given leave by Bil–Mar, nor did Moland accumulate retirement benefits at Bil–Mar. Bil–Mar did not pay employment taxes for Moland.

Moland was subject to IBP's rules and regulations while she was employed by IBP. IBP had the ability to maintain Moland's employment or to discharge her. IBP scheduled Moland's work at the scale house, not Bil–Mar, and supervised her work. Bil–Mar did not directly employ Moland. No one from Sara Lee ever directed Moland's activities while she was working at Bil–Mar's scale house.

At one point during her tenure at the scale house, Moland had trouble with a truck driver who shoved her out of the way in order to weigh his truck himself. Dave Sanders, a Bil–Mar supervisor, wrote a letter to the truck driver informing him that Moland was responsible for weighing the trucks at the scale house.

Russell Camerer, a Bil–Mar employee, complained about Moland smoking while working in the scale house. Camerer also accused Moland of starting fires in the scale house. Following Camerer's complaints, a "No Smoking" sign was put up in the scale house. On another occasion, Camerer reported his suspicions that Moland was stealing sand buckets from the scale house. Dale Carver, Bil–Mar's human resources supervisor, investigated Camerer's allegation that Moland had stolen Bil–Mar property and concluded that Moland had not stolen any property from Bil–Mar.

Moland's conflict with Camerer dates back several years to when Camerer sexually groped Moland while she was working at Darrell's Food Town in Alta, Iowa. When Moland started working at Bil–Mar's scale house, Camerer started a rumor that he had had sexual intercourse with Moland. When Moland told Bil–Mar employees that Camerer's claims were false, Camerer told Moland that he was going to do whatever he could to get Moland fired from her job at the scale house. No actions were taken by Bil–Mar regarding Camerer's harassment until January 1995, when Greg Steenblock orally reprimanded Camerer. When Moland complained of further harassment by Camerer in February 1995, Bil–Mar responded to Moland's complaint of harassment by giving Camerer a written warning. Bil–Mar then contacted IBP and requested that Moland no longer be assigned to work in Bil–Mar's scale house. IBP subsequently told Moland that she would no longer be assigned to work at Bil–Mar's scale house due to Bil–Mar's request that she not be assigned there.

Moland remained on the seniority employment rolls at IBP after she was removed from her scale house position. Moland was told by IBP personnel that she would be reassigned to another position at IBP. However, no positions were made available to Moland. After one year she was dropped from IBP's seniority role and her employment was terminated.

### B. Contested Facts

1. Whether Moland reported to Bil–Mar the sexual nature of Camerer's harassment?

2. Whether Moland complained to Bil–Mar in August 1994, that she was being harassed by Camerer?

### IV. LEGAL ANALYSIS

#### A. Employment Relationship Requirement

Moland's claims for relief allege unlawful sexual discrimination under Title VII of the

1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Title VII prohibits discrimination by an employer against an employee on the basis of sex. *See Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1301 n. 20 (8th Cir.1997); *Jetton v. McDonnell Douglas Corp.*, 121 F.3d 423, 425 (8th Cir.1997); *Wilde v. County of Kandiyohi*, 15 F.3d 103, 104 (8th Cir.1994); *Spirides v. Reinhardt*, 613 F.2d 826, 829–30 (D.C.Cir.1979). Under Title VII, "employers" are prohibited from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Thus, in order to prevail on her Title VII claim, Moland must demonstrate that defendants were her "employer." *See Devine v. Stone, Leyton & Gershman, P.C.*, 100 F.3d 78, 79 (8th Cir. 1996) (holding that plaintiff failed to show that shareholders of professional corporation were employees for purposes of demonstrating that professional corporation had the requisite number of employees to fall within Title VII's definition of employer); *Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 (5th Cir.1993) (affirming district court's order dismissing plaintiffs' Title VII and ADEA claims for lack of jurisdiction where plaintiff failed to establish that defendants were her employers).

■ Defendants assert that they were not Moland's employer for purposes of Title VII. Moland concedes that she cannot prevail against defendants on her discrimination claims unless she can demonstrate the existence of an employer-employee relationship with defendants. Moland, however, contends that the extent and nature of the control asserted by defendants over the work and workplace establishes an employer-employee relationship between her and defendants for Title VII purposes. As several federal courts of appeals have recognized, "whether a person is 'an employee under Title VII is a question of federal law.'" *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1159 (5th Cir. 1986) (quoting *Calderon v. Martin County*, 639 F.2d 271, 272–73 (5th Cir.1981)); *accord Montgomery v. Brookshire*, 34 F.3d 291, 295 (5th Cir.1994); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991); *Clark v. Tarrant County, Tex.*, 798 F.2d 736, 742 (5th Cir. 1986); *Armbruster v. Quinn*, 711 F.2d 1332, 1339 (6th Cir.1983); *Cobb v. Sun Papers*, 673 F.2d 337, 339 (11th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982).

### B. Determination of Employee Status Under Title VII

Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person . . :" 42 U.S.C.2000e(b).[1] An "employee" is defined as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

Courts have adopted three tests for determining whether an individual is an employee: (1) the common-law agency test, first set forth in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) and more recently reaffirmed by the Supreme Court in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); (2) the economic realities test, *see Armbruster*, 711 F.2d at 1340; and (3) the hybrid test, a combination of the common law agency and economic realities tests, *see Wilde*, 15 F.3d at 105; *Cobb*, 673 F.2d 337, 340–41.

The Eighth Circuit Court of Appeals has expressly repudiated application of the economic realities test in Title VII cases.[2] *See*

1. There is no dispute in this case that both Bil–Mar and Sara Lee employ the requisite number of employees to constitute employers for the purposes of Title VII. Instead, the issue of contention between the parties is whether Moland was an employee of Bil–Mar and Sara Lee.

2. The Supreme Court developed the economic reality test in a Fair Labor Standards Act

("FLSA") case. *See Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). The Court relied on FLSA's provision that the term "employ" includes "to suffer or permit to work," 29 U.S.C. § 203(g), a definition not found in Title VII. In *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), the United States Supreme Court unanimously ruled that traditional agency

*Wilde,* 15 F.3d at 106. Instead, the court has applied the hybrid test while noting that it sees "no significant difference" between the hybrid test and the common-law test articulated by the Supreme Court in *Darden. Id.* As the Eighth Circuit Court of Appeals explained:

> Under both tests, all aspects of the working relationship are considered. The Restatement's list of common-law factors used in both tests is nonexhaustive, and consideration of the additional economic factors does not broaden the traditional common-law test. Indeed, by adding employee benefit and tax treatment factors to the Restatement factors in its explanation of the common-law test, the Supreme Court recognized the common-law test encompasses economic factors.

*Id.; see Lambertsen v. Utah Dep't of Corrections,* 79 F.3d 1024, 1028 (10th Cir.1996) (noting "that there 'is little discernible difference between the hybrid [approach] and the common law agency [approach].' ") (quoting *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993)); *Frankel,* 987 F.2d at 90 ("We note that in practice there is little discernible difference between the hybrid test and the common law agency test. Both place their greatest emphasis on the hiring party's right to control the manner and means by which the work is accomplished and consider a nonexhaustive list of factors as part of a flexible analysis of the 'totality of the circumstances.' "); *see also Folkerson v. Circus Circus Enters.,* No. 93–17158, 1995 WL 608432 at *3 (9th Cir.1995) (in an unpublished decision, the Ninth Circuit Court of Appeals

stated: "We conclude that the common-law agency approach discussed in *Darden* is in practice largely indistinguishable from the hybrid approach we had already established."). Therefore, the court will apply the hybrid test here to determine if Moland was an employee of Bil–Mar for the purposes of Title VII.

### C. Application Of The Hybrid Test

■■■ The Eighth Circuit Court of Appeals has instructed that "[u]nder the hybrid test, the term 'employee' is construed in light of general common-law concepts, taking into account the economic realities of the situation." *Wilde,* 15 F.3d at 105 (citing *Cobb,* 673 F.2d at 340–41). Under the hybrid test, numerous factors regarding the employment relationship are considered, and no one factor is decisive. *Id.; Oestman v. National Farmers Union Ins. Co.,* 958 F.2d 303, 305 (10th Cir.1992). As the Court of Appeals for the District of Columbia explained in *Spirides:*

> This [hybrid] test calls for application of general principles of the law of agency to undisputed or established facts. Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. Nevertheless, the extent of the employer's right to control the "means and manner" of the worker's performance is the most important factor to review here, as it is at common law.... If an employer has the right to control and direct the work of an individual, not only as to the result to be

law criteria should be used to determine whether the plaintiff was an employee under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Court rejected its reasoning in previous cases decided under the National Labor Relations Act, *NLRB v. Hearst,* 322 U.S. 111, 124, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), and the Social Security Act, *United States v. Silk,* 331 U.S. 704, 713, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), which, applying the economic reality test, held that the term "employee" was to be construed more broadly than the common law definition. *Darden,* 503 U.S. at 324. In arriving at this conclusion, the Court took note of the fact that Congress amended the National Labor Relations Act to effectively nullify the *Hearst* decision and require the application of traditional agency principles in determining employees from independent contractors. *Id.* 324–25. As a result, in

1989, the Supreme Court abandoned its emphasis on construing "employee" in light of the purpose to be attained by the statute in question in favor of a traditional legal definition. *Id.* (citing *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). The Court distinguished the economic reality test applied in FLSA cases, *see Goldberg,* 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100, because unlike ERISA, FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.' " *Darden,* 503 U.S. at 326. The Court further rejected the use of a test based upon the plaintiff's expectations because such an approach would "compromise the capacity of companies ... to figure out who their 'employees' are and what ... their pension fund obligations will be." *Id.* at 327.

achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist. *Spirides,* 613 F.2d at 831–32. The *Spirides* court then went on to list additional factors which are relevant to the consideration of this issue:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 832; *accord Oestman,* 958 F.2d at 305 (quoting with approval the *Spirides* factors); *Fields v. Hallsville Indep. Sch. Dist.,* 906 F.2d 1017, 1019 n. 4 (5th Cir.1990) (citing *Spirides* factors with approval), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Diggs v. Harris Hosp.–Methodist, Inc.,* 847 F.2d 270, 272–73 (5th Cir.) (citing *Spirides* factors), *cert. denied,* 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988); *Mares v. Marsh,* 777 F.2d 1066, 1067–68 (5th Cir. 1985) (accepting the *Spirides* factors, but noting that the right to control is an especially crucial factor); *Wilde v. County of Kandiyohi,* 811 F.Supp. 446, 451–52 (D.Minn.1993)

(quoting *Spirides,* 613 F.2d at 832), *aff'd,* 15 F.3d 103 (8th Cir.1994).[3] With these principles in mind, the court turns to the case at hand to apply the hybrid test, considering as it must, the above factors in order to evaluate Bil–Mar's relationship with Moland.

### 1. Bil–Mar's right to control and supervise Moland

In its motion for summary judgment, Bil–Mar asserts that it exercised little, if any, control over Moland. As the court indicated above, the employer's right to control the "means and manner" of the worker's performance is the most important factor in the analysis under either the hybrid test or the common law test. *Alexander,* 101 F.3d at 492; *Ost v. West Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 438 (7th Cir.1996); *Lambertsen,* 79 F.3d at 1027; *Frankel,* 987 F.2d at 90; *Oestman,* 958 F.2d at 305; *Fields,* 906 F.2d at 1019; *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Baker v. McNeil Island Corrections Ctr.,* 859 F.2d 124, 128 (9th Cir. 1988); *Broussard,* 789 F.2d at 1160; *Zippo Mfg. Co.,* 713 F.2d at 37; *Cobb,* 673 F.2d 339; *Spirides,* 613 F.2d at 831. The logical underpinning of this factor being that "[i]f an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Wheeler,* 825 F.2d at 259.

Here, Moland was directly employed by IBP. Bil–Mar agreed to permit IBP to use Bil–Mar's scale house to weigh IBP trucks. Pursuant to this arrangement, IBP assigned Moland to work at Bil–Mar's scale house. Moland's job at the scale house was to weigh only IBP trucks coming to or leaving the

---

**3.** The similarity between the hybrid test and the common law test is demonstrated by similarity in the factors to be considered under each test. The Supreme Court, in *Reid* and *Darden* approved consideration of the following factors in an analysis of whether an individual is an employee under the general common law of agency: 1) the hiring party's right to control the manner and means by which the product is accomplished; 2) the skill required by the hired party; 3) the source of instrumentalities and tools; 4) the location of the work; 5) the duration of the relationship between the parties; 6) the hiring party's right to assign additional projects; 7) the hired party's discretion over when and how long to work; 8) the method of payment; 9) the hired party's role in hiring and paying assistants; 10) whether the work is part of the hiring party's regular business; 11) whether the hiring party is in business; 12) the hired party's employee benefits; and 13) tax treatment of the hired party's compensation. *Darden,* 503 U.S. at 323–24; *Reid,* 490 U.S. at 751–52.

IBP plant. While working in the scale house, Moland was subject to IBP's rules and regulations, and she reported to her supervisor at IBP, Sue Driver. IBP—not Bil-Mar—scheduled Moland's work at the scale house and supervised her work there. Bil-Mar's control over Moland's conduct and work at the scale house was *de minimis*, limited only to requiring her to account for scale tickets issued during her shift and prohibiting smoking in the scale house. Indeed, Bil-Mar's lack of control over Moland is demonstrated by the fact that it had to contact IBP in order to have Moland no longer be assigned to the scale house. In sum, it was IBP, and not Bil-Mar, which had the right to control and supervise Moland's work at the scale house. The court will next examine the other applicable hybrid test factors.

### 2. *Other hybrid test factors*

Bil-Mar did not compensate Moland for her work in the scale house. Moland's hourly wage was paid by IBP. Additionally, Bil-Mar makes no deductions for taxes or other contributions from Moland's compensation. These activities are handled by IBP. Furthermore, Bil-Mar did not provide her with benefits. Moland was not given leave by Bil-Mar nor did Moland accumulate retirement benefits at Bil-Mar.

Moreover, Moland cannot dispute that she had considerable latitude in how she conducted the operations of the scale house. She had no direct supervision from Bil-Mar employees, and the only requirement placed on her by Bil-Mar was that she had to observe the no smoking prohibition in the scale house and that she was required to account for all tickets issued during her shift. As to whether Moland's work was an integral part of Bil-Mar's regular business, Moland's position required her to weigh only IBP's trucks. Thus, in no way could Moland's position be deemed to be an integral part of Bil-Mar's business. While Moland had what appears to be daily contact with Bil-Mar employees, her level of contact with Bil-Mar employees indicates that Moland had significant independence, as opposed to the kind of direct supervision and control that is typical of an employer-employee relationship. *Cf. Zippo Mfg. Co.*, 713 F.2d at 38 (holding that the periodic monitoring of a sales representative did not amount to supervision of performance within meaning of the hybrid test). Indeed, the only factor that weighs ever so slightly toward a finding of an employment relationship between Moland and Bil-Mar is the fact that Bil-Mar furnished Moland with her place of work, the scale house, and the equipment used in her position at the scale house.

While the hybrid test for determining employee status under Title VII cannot be applied with mathematical precision, after analyzing the applicable hybrid test factors the court concludes that neither Bil-Mar nor Sara Lee controlled Moland, and that Moland can not be deemed an employee of either defendant for the purposes of Title VII. This conclusion, however, does not end the court's inquiry for Moland has also alleged that an indirect employment relationship may be sufficient to bring Bil-Mar within the ambit of Title VII. *See Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973); *see also Doe ex rel. Doe v. St. Joseph's Hosp.*, 788 F.2d 411 (7th Cir.1986).

### D. *Indirect Employee–Employer Relationship*

#### 1. *Sexual harassment claim*

#### a. *Sibley line of authorities*

A few courts have deemed a defendant an "employer" if the defendant has a sufficient degree of control over plaintiff's access to the job market, *i.e.*, sufficient control over plaintiff's employment opportunities. *See Sibley Mem'l Hosp.*, 488 F.2d 1338. The seminal case in this area is the decision in *Sibley*, 488 F.2d 1338. In *Sibley*, a male nurse brought suit under Title VII alleging that the defendant hospital discriminated on the basis of sex by refusing to refer male nurses to female patients. The defendant there argued that "since no direct employment relationship between itself and (plaintiff) was ever contemplated by either of them, it is not an employer under the Act with respect to him." *Id.* at 1340. The court, in addressing the problem of discrimination in access to employment, observed:

Control over access to the job market may reside, depending upon the circumstances

of the case, in a labor organization, an employment agency, or an employer as defined in Title VII; and it would appear that Congress has determined to prohibit each of these from exerting any power it may have to foreclose, on invidious grounds, access by any individual to employment opportunities otherwise available to him. To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited. *Id.* at 1341.

Thus, while no direct employment relationship existed between plaintiff and the hospital, the hospital's recommendation was in practice necessary to the employment because the hospital "control(led) the premises upon which those services were to be rendered, including (plaintiff's) access to the patient for purposes of the initiation of such employment." *Id.* at 1342. The Court of Appeals for the District of Columbia therefore held that, although there did not exist any employment relationship between the plaintiff nurse and the defendant hospital "in the sense of the usual indicia of such employment," the plaintiff had standing to pursue his Title VII claim. *Id.*

"*Sibley* standing" has since realized widespread attention, though not universal acceptance. *See generally Vakharia v. Swedish Covenant Hosp.*, 765 F.Supp. 461 (N.D.Ill. 1991) (extensively addressing post-*Sibley* developments).[4] In a line of cases descending from *Sibley,* a number of courts have held that Title VII may apply even in the absence of a direct employment relationship between the plaintiff and defendant when a defendant interferes in a plaintiff's employment opportunities with a third party where the defendant controls access to those opportunities. *Alexander,* 101 F.3d at 491; *Sherman v.*

*Burke Contracting, Inc.,* 891 F.2d 1527, 1532 (11th Cir.1990); *Zaklama v. Mt. Sinai Medical Ctr.,* 842 F.2d 291, 294 (11th Cir.1988); *Doe,* 788 F.2d at 422–23; *Gomez v. Alexian Bros. Hosp.,* 698 F.2d 1019, 1021 (9th Cir. 1983); *Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1063 (2d Cir.1982), *vacated and remanded on other grounds,* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); *Shehadeh v. Chesapeake and Potomac Tel. Co. of Md.,* 595 F.2d 711, 721 (D.C.Cir.1978); *Pelech v. Klaff–Joss, L.P.,* 815 F.Supp. 260, 263 (N.D.Ill.1993); *King v. Chrysler Corp.,* 812 F.Supp. 151, 153 (E.D.Mo.1993); *Vakharia,* 765 F.Supp. 461, 465–66 (N.D.Ill.1991); *Puntolillo v. New Hampshire Racing Comm'n,* 375 F.Supp. 1089 (D.N.H.1974).

The Eighth Circuit Court of Appeals has not addressed the question of whether an individual may bring a Title VII action against an employer who has interfered with that person's employment opportunities with a third party. Although all of the decisions adopting the *Sibley* line of authority come from sister circuit courts of appeals and are not binding precedent in this district court, these decisions do constitute persuasive authority. *See Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987); *Generali v. D'Amico,* 766 F.2d 485, 489 (11th Cir. 1985); *United States v. Diamond,* 430 F.2d 688, 691 (5th Cir.1970).

Although the Eighth Circuit Court of Appeals has not addressed the issue of whether the obligations and rights created under Title VII would extend beyond the immediate employer-employee relationship, other federal courts have held that, based on the language of § 2000e–2(a)(1), Congress clearly intended that Title VII would extend beyond the immediate employer-employee relationship under certain circumstances. *Zaklama v. Mt. Sinai Medical Ctr.,* 842 F.2d 291, 294 (11th Cir.1988); *see also King v. Chrysler Corp.,* 812 F.Supp. 151, 153 (E.D.Mo.1993) ("The statute [Title VII] does not specify that the

---

**4.** In *Vakharia,* the district court reasoned that to permit an employer to discriminatorily deny individuals access to employment opportunities with third parties, while preventing such conduct with regard to its own employees, would be to sanction the very behavior Title VII sought to eliminate. *Vakharia,* 765 F.Supp. at 465–66. Accordingly, the court held that a plaintiff may proceed under Title VII if he or she can establish that the defendant barred plaintiff's access to employment with another party for discriminatory reasons. *Id.; see also Doe,* 788 F.2d at 423.

employer committing the unlawful employment practice must employ the injured individual."). Those circumstances include controlling the plaintiff's access to employment and denying that access based on unlawful criteria. *Zaklama,* 842 F.2d at 294 (citing *Sibley,* 488 F.2d at 1342).[5] In *Sibley,* the court of appeals observed:

"Control over access to the job market may reside, depending upon the circumstances of the case, in a labor organization, an employment agency, or an employer as defined in Title VII; and it would appear that Congress has determined to prohibit each of these from exerting any power it may have to foreclose, on invidious grounds, access by any individual to employment opportunities otherwise available to him. To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited."

*Zaklama,* 842 F.2d at 294 (quoting *Sibley,* 488 F.2d at 1341).

Although, as Bil–Mar points out in its brief, the *Sibley* line of authority typically has been applied in cases arising in a hospital setting, several courts, including district courts in this circuit, have extended the doctrine to other factual situations. *See, e.g., Magnuson v. Peak Tech. Serv.,* 808 F.Supp. 500 (E.D.Va.1992) (car manufacturer held potentially liable to plaintiff, who worked for

car dealership, for failing to end sexual harassment of plaintiff); *Pelech,* 815 F.Supp. at 263 (cleaning company and its chairman held potentially liable under Title VII for causing plaintiff, a security guard in a high-rise building, to be fired); *King,* 812 F.Supp. at 153 (holding that cafeteria cashier employed by cafeteria that operated on automobile company's premises for automobile company's employees did not need to have an employment relationship with automobile company in order to maintain employment discrimination action against it under Title VII); *Mitchell v. Tenney,* 650 F.Supp. 703, 708 (N.D.Ill.1986) (commodities futures company held potentially liable to commodities trader, even though company was not an employer of trader).

■ Guided by *Sibley,* and those decisions following *Sibley,* the court concludes that 42 U.S.C. § 2000e–2 applies where an employer controls an individual's access to employment opportunities and denies that access based on unlawful criteria even though the individual is not an employee of that employer. Here, Moland's authorized employment at Bil–Mar's weight station was terminated. She contends that her authorization to work at the weight station was revoked because of her unwillingness to work in a sexually hostile work environment. She further contends that the termination of her authorization to work at the weight station interfered with her employment at IBP. Accordingly, the court concludes that this segment of defendants' motion for summary judgment as to Moland's first cause of action is denied.

---

**5.** In *Zaklama v. Mt. Sinai Medical Ctr.,* 842 F.2d 291 (11th Cir.1988), the Eleventh Circuit Court of Appeals followed those courts which endorsed *Sibley's* view that Title VII does not require an immediate employer-employee relationship. In *Zaklama,* the plaintiff, an Egyptian anesthesiology resident, accepted a one year residency with Jackson Memorial Hospital. *Id.* at 292. During his year of residency with Jackson Memorial, he was supposed to rotate through each of three area hospitals for three months each. *Id.* While the plaintiff was at Mt. Sinai Medical Center, the head of the department of anesthesiology at Mt. Sinai decided that the plaintiff could not complete his rotation at that hospital. *Id.* Because the plaintiff was not permitted to complete his rotation at Mt. Sinai, he was dismissed from the residency program at Jackson Memorial. *Id.*

The plaintiff brought suit pursuant to Title VII and 42 U.S.C. § 1981. *Id.* The jury awarded the plaintiff compensatory and punitive damages, but the district judge granted the defendant's motion for judgment notwithstanding the verdict. *Id.* The Court of Appeals held that the district court's interpretation of Title VII was too narrow, stating:

While it is true that it was Jackson Memorial that discharged Zaklama from the residency program, it does not follow that Mt. Sinai is immune from liability.... It is clear from the language of the statute that Congress intended that the rights and obligations it created under Title VII would extend beyond the immediate employer-employee relationship.

*Id.* at 294.

### b. The prompt remedial action requirement

Bil–Mar also asserts in its supplemental brief that it is entitled to summary judgment on Moland's sexual harassment claim because it took prompt remedial action when it learned of Moland's complaint of harassment. "Once an employee complains to her employer about sexual harassment by a coworker, the employer is on notice and must take proper remedial action to avoid liability under Title VII." *Hathaway v. Runyon,* 132 F.3d 1214, 1223 (8th Cir. 1997) (citing *Davis v. Tri–State Mack Distrib., Inc.,* 981 F.2d 340, 343 (8th Cir.1992)); *Zirpel v. Toshiba Am. Info. Sys., Inc.,* 111 F.3d 80, 81 (8th Cir.1997) (also finding an employer must take prompt remedial action after it knew or should have known of harassment). In addition to conducting an investigation, the employer must take " 'prompt remedial action reasonably calculated to end the harassment.' " *Hathaway,* 132 F.3d at 1223 (again citing *Davis,* 981 F.2d at 343); *Zirpel,* 111 F.3d at 81 (the district court properly granted summary judgment in an employer's favor because the employer "promptly took 'remedial action ... reasonably calculated to end the harassment' " once it knew or should have known about a harassing co-employee's behavior, citing *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)). The employer cannot avoid liability by doing nothing simply because the co-worker denies that the harassment occurred. *Hathaway,* 132 F.3d at 1223 (citing *Fuller v. City of Oakland,* 47 F.3d 1522, 1529 (9th Cir.1995)). Indeed, an employer may take remedial action even where a complaint is uncorroborated. *Id.* (citing *Knabe v. Boury Corp.,* 114 F.3d 407, 409, 413 & n. 11 (3d Cir.1997)).

Options for appropriate remedial action include taking disciplinary action to stop the harassment; transferring the alleged harasser to a different area where he or she would not come in contact with the complainant; scheduling the individuals involved on different shifts; putting a signed written warning or reprimand in personnel files; or placing the offending employee on probation pending any further complaints. *Id.* (citing *Knabe,* 114 F.3d at 413); *Zirpel,* 111 F.3d at 81; *Intlekofer v. Turnage,* 973 F.2d 773, 780 & n. 9 (9th Cir.1992); *Ellison v. Brady,* 924 F.2d 872, 881–82 (9th Cir.1991); *Barrett v. Omaha Nat'l Bank,* 726 F.2d 424, 426 (8th Cir.1984)).

### c. Bil–Mar's response to harassment

The court concludes that Moland has generate a genuine issue of material fact as to whether Bil–Mar's response was sufficiently "prompt." FED.R.CIV.P. 56(e) (to avoid summary judgment, the non-movant must generate a genuine issue of material fact based on affidavits, "depositions, answers to interrogatories, and admissions on file"); *Celotex,* 477 U.S. at 324 (to avoid summary judgment, the non-movant must designate "specific facts showing that there is a genuine issue for trial"); *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1997); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Here, Moland alleges that she first reported Camerer's harassment to his immediate supervisor, Don Tuel, in August 1994, directly after the first incident of harassment. Bil–Mar, on the other hand, contends that Moland did not complain of Camerer's actions until January 1995. It is undisputed that no actions were taken by Bil–Mar regarding Camerer's harassment until January 1995, when Greg Steenblock orally reprimanded Camerer. When Moland complained of further harassment by Camerer in February 1995, Bil–Mar gave Camerer a written warning and took affirmative steps to have Moland's assignment to its weight station rescinded.

The court concludes that Moland has generated material questions of fact as to whether Bil–Mar's remedial actions were taken only after repeated complaints, thus raising a question of fact as to whether Bil–Mar knew or should have known about the harassment and failed to undertake a proper investigation at an earlier date. Because Moland has generated a genuine issue of material fact that Bil–Mar's response to her complaints regarding Camerer were not sufficiently prompt or were not reasonably calculated to end the harassment, Bil–Mar is not entitled to summary judgment on Moland's claim for

Bil–Mar's liability for Camerer's sexual harassment.

## 2. Retaliation claim

■ In Moland's second cause of action, she alleges that Bil–Mar requested her removal from the weight station in retaliation for her reporting sexual harassment in the workplace in violation of 42 U.S.C. § 2000e–3(a). 42 U.S.C. § 2000e–3(a) provides in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

The court thus must confront an issue which it raised *sua sponte:* whether the *Sibley* line of authority applies with equal force to Moland's claim that defendants retaliated against her for reporting sexual harassment in the workplace, in violation of 42 U.S.C. § 2000e–3(a), given the differences in the language found in § 2000e–2(a)(1) and the language found in § 2000e–3(a). Specifically, the court notes that § 2000e–3(a) refers to discrimination "against any of his employees" while § 2000e–2(a)(1) speaks about discriminatory actions against "any individual." The Court of Appeals for the District of Columbia noted the distinction between the terms "employee" and "any individual" in *Sibley:*

The Act defines "employee" as "an individual employed by an employer," but nowhere are there words of limitation that restrict references in the Act to "any individual" as comprehending only an employee of an employer. Nor is there any good reason to confine the meaning of "any individual" to include only former employees and applicants for employment, in addition to present employees.

*Sibley,* 488 F.2d at 1341. Thus, this statutory distinction between "employees" and "any individual" appears to be the statutory underpinnings of the holding in *Sibley.* The fact that the retaliation section uses the term "employee" rather than "any individual" would therefore appear to substantially un-

dermine applying the *Sibley* rationale to retaliation claims. The court requested further briefing on this specific issue.

In response to the court's inquiry, Moland has directed the court's attention to the Sixth Circuit Court of Appeals decision in *Christopher v. Stouder Mem'l Hosp.,* 936 F.2d 870 (6th Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). In *Christopher,* the Sixth Circuit Court of Appeals held that federal courts have jurisdiction to entertain retaliation claims made pursuant to 42 U.S.C. § 2000e–3 where the defendant is in a position to interfere with the plaintiff's employment opportunities even though the plaintiff is not an employee of the defendant. *Christopher,* 936 F.2d at 876. In *Christopher,* the plaintiff, a private duty scrub nurse holding temporary privileges at the defendant hospital, alleged that her privileges at the hospital were terminated in violation of both 42 U.S.C. §§ 2000e–2 and 2000e–3. *Id.* at 871–74. Initially, the Sixth Circuit Court of Appeals observed, "[w]hile it is true that Christopher was not a direct employee of Stouder, we find that Stouder's control over Christopher's ability to practice as a private scrub nurse sufficiently impacted her employment opportunities to bring her claims within the intended scope of § 2000e–3." *Id.* at 874. The court specifically addressed what effect the differences in the language found in § 2000e–2(a)(1) and that found in § 2000e–3(a) should have on the viability of *Sibley* line of authority:

Stouder argues that *Sibley, Gomez,* and *Doe* are distinguishable because all of those cases were actions brought under § 2000e–2, which allows a broader range of persons to sue than § 2000e–3 upon which Christopher relies....

....

While Stouder's position has some logical appeal at first glance, we find it is ultimately not persuasive. First, while the courts in *Doe, Gomez,* and *Sibley Mem. Hosp.* do rely, to some extent, on the "any individual" language of § 2000e–2, this language is not the sole basis of these holdings. For example, in *Sibley Mem. Hosp.,* the court makes much of the fact that the general remedial section of Title VII does

not refer only to any "employee" but provides recourse to "persons aggrieved." *See* 42 U.S.C. § 2000e–5(b); 488 F.2d at 1341–42; *see also Gomez,* 698 F.2d at 1021. The court states: "The fact that the Act purports to provide remedies for a class broader than direct employees is a strong indication that the proscriptions contemplated by [ § 2000e–2] reach beyond the immediate employment relationship." *Sibley Mem. Hosp.,* 488 F.2d at 1341. It is important to note that the remedial section to which the court refers, § 2000e–5, applies equally to plaintiffs suing under § 2000e–2 and § 2000e–3. Thus, the courts in reaching their conclusions in *Sibley* and *Gomez,* were not relying on the "any individual" language of § 2000e–2, but rather, were discerning the meaning of "employee" in the Title VII context by looking to the intent and scope of Title VII as a whole.

*Christopher,* 936 F.2d at 875–76.

Finally, the court went on to discuss its rationale for extending the holding of the *Sibley* line of authorities to Christopher's retaliation claim:

> As the goal of Title VII is to preserve employment opportunity, we can see no reason to conclude that Congress intended Title VII to prohibit discrimination by a non-employer defendant on the basis of race or sex, and to allow the same non-employer defendant to discriminate against a person who engages in protected activity under Title VII. In both instances the acts of the non-employer defendant have the effect of denying the plaintiff employment based upon impermissible grounds under the Act. Thus, we find that the trial court had jurisdiction to hear Christopher's § 2000e–3 claim based upon the principles and reasoning articulated in *Sibley Mem. Hosp.* and its progeny.

*Id.* at 876–77.

Again, although the *Christopher* case, as a decision of a sister circuit court of appeals, is not binding precedent in this district court, it is persuasive authority. See *Colby,* 811 F.2d at 1123; *Generali,* 766 F.2d at 489; *Diamond,* 430 F.2d at 691. Indeed, there is a longstanding practice in the Eighth Circuit Court of Appeals that, on an unsettled question of federal law, while a decision by another court of appeals is not compulsively binding, the Eighth Circuit Court of Appeals will, in the interest of judicial uniformity, accept it as persuasive and follow it, unless " 'clearly convinced that it is wrong.' " *McDuffee v. United States,* 769 F.2d 492, 494 (8th Cir. 1985) (quoting *Homan v. United States,* 279 F.2d 767, 773 (8th Cir.), *cert. denied,* 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960)). Here, Bil–Mar has come forward with no contrary authority. While the court has grave doubts as to the validity of the *Christopher* decision, given the difference between the language employed in § 2000e–2 and § 2000e–3, the *Christopher* decision, nonetheless, is persuasive authority and, in the absence of clear contrary authority, one which the court will follow. Because the *Christopher* court held that a court has jurisdiction to hear a retaliation claim based upon the principles and reasoning articulated in *Sibley, Christopher,* 936 F.2d at 877, and the court is not clearly convinced that the *Christopher* decision is wrong, the court concludes that Moland may proceed with her retaliation claim. This aspect of Bil–Mar's Motion For Summary Judgment, therefore, is denied.

### E. Certification For Interlocutory Appeal

The court finds that this matter should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). That statute provides, in pertinent part, as follows:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). As the Eighth Circuit Court of Appeals has observed, the statute provides for certification of controlling questions of law by the district court for interlocutory appeal in circumstances where an appeal is otherwise unavailable. *City of Fort Madison, Iowa v. Emerald Lady,* 990 F.2d 1086, 1088 n. 4 (8th Cir.1993). However, the appellate court must, upon certification, decide, in its discretion, whether to permit the appeal on the question certified. *Id.*[6]

 In a recent decision, the Eighth Circuit Court of Appeals considered the standards applicable to an interlocutory appeal pursuant to § 1292(b). *See White v. Nix,* 43 F.3d 374 (8th Cir.1994). The court held that "[t]he requirements of § 1292(b) are jurisdictional," and the statute should be used with care to avoid piece-meal appeals. *White,* 43 F.3d at 376. Thus, the court stated that § 1292(b) " 'should and will be used only in exceptional cases where a decision on appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases.' " *Id.* (quoting S.Rep. No. 2434, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5260). Thus, the statute should be used "sparingly" and the burden, on the movant, is a heavy one to show that the case is an "exceptional" one in which immediate appeal is warranted. *Id.* Nonetheless, the court's grant of interlocutory appeal is reviewed for abuse of discretion. *Id.* (finding abuse of discretion in that case in failure to consider whether the appeal involved a controlling question of law.). The court therefore reiterated that § 1292(b) establishes three criteria that must be met for certification by the court: "the district court must be 'of the opinion that' (1) the order 'involves a controlling question of law'; (2)

'there is substantial ground for difference of opinion'; and (3) certification will 'materially advance the ultimate termination of the litigation.' " *Id.* at 377.

 The court is of the opinion that this decision presents an "exceptional case" in which immediate interlocutory appeal should be permitted. *Id.* The court finds that this order involves a controlling question of law, specifically, whether the Eighth Circuit Court of Appeals will recognize jurisdiction to entertain discrimination claims brought pursuant to 42 U.S.C. § 2000e-2 and /or retaliation claims made pursuant to 42 U.S.C. § 2000e-3 where the defendant is in a position to interfere with the plaintiff's employment opportunities even though the plaintiff is not an employee of the defendant. If the Eighth Circuit Court of Appeals does not recognize such claims then defendants are entitled to have judgment entered for them and against Moland on her Title VII claims. It is also clear to the court that "there is substantial ground for difference of opinion," *id.,* since the scope of the *Sibley* line of authority has not yet been fully developed nor has any circuit court of appeals specifically answered the question left unanswered by the Seventh Circuit in *Alexander,* 101 F.3d at 493–94 n. 2: "whether an employee of employer X may bring a Title VII action against employer Y when Y is not his employer, but merely someone whose discriminatory conduct interferes with his employment with employer X." *Alexander,* 101 F.3d at 493–94 n. 2. Also, only one circuit court of appeals has extended the *Sibley* line of analysis to Title VII retaliation claims. Finally, certification will "materially advance the ultimate termination of the litigation,"

---

**6.** Because § 1292(b) provides for appeal of orders otherwise unappealable, and thus provides an avenue for resolving disputed and controlling questions of law, the resolution of which will materially further the litigation, the appellate court reviews de novo the questions of law certified by the district court. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). The nature and scope of the appellate court's review is not rigidly determined by the certified questions, however. *Id.* (citing *In re Oil Spill by the Amoco Cadiz,* 659 F.2d 789, 793 n. 5 (7th Cir.1981)). The appellate court

remain[s] free to consider " ' "such questions as are basic to and underlie" ' " the questions certified by the district court. [*In re Oil Spill by the Amoco Cadiz,* 659 F.2d at 793 n. 5] (quoting *Helene Curtis Indus., Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1335 (7th Cir.1977) (quoting 9 J. Moore, *Moore's Federal Practice* ¶ 110.25[1], at 270)); *Merican, Inc. v. Caterpillar Tractor Co.,* 713 F.2d 958, 962 n. 7 (3d Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir. 1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).
*Simon,* 816 F.2d at 400.

*id.,* because, if this court is incorrect in its conclusion that it may consider Moland's discrimination claims brought pursuant to 42 U.S.C. § 2000e-2 and retaliation claims made pursuant to 42 U.S.C. § 2000e-3, defendants are entitled to dismissal of the complaint. This matter will therefore be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the question of whether an employee of employer X may bring a Title VII action for discrimination claims pursuant to 42 U.S.C. § 2000e-2 and/or retaliation claims made pursuant to 42 U.S.C. § 2000e-3 against employer Y when Y is not his employer, but merely someone whose discriminatory conduct interferes with his employment with employer X. *Alexander,* 101 F.3d at 493-94 n. 2. This court will enter a stay of the proceedings in this case while such an interlocutory appeal is pending. 28 U.S.C. § 1292(b).

### V. CONCLUSION

The court initially concludes that neither defendant Bil-Mar nor defendant Sara Lee was an "employer" of plaintiff Moland within the provisions of Title VII. However, the court further finds that the rights created under Title VII extend beyond the immediate employer-employee relationship and apply to discrimination claims brought pursuant to 42 U.S.C. § 2000e-2 and/or retaliation claims made pursuant to 42 U.S.C. § 2000e-3 where the defendant is in a position to interfere with the plaintiff's employment opportunities even though the plaintiff is not an employee of the defendant. The court further concludes that Moland has generated material questions of fact as to whether Bil-Mar's took prompt remedial actions, thus defendants are not entitled to summary judgment on Moland's claim for sexual harassment. Therefore, defendants' Motion For Summary Judgment is **denied.** This order is **certified for interlocutory appeal,** and this matter is stayed while any such interlocutory appeal is pending. 28 U.S.C. § 1292(b).

**IT IS SO ORDERED.**