**Steve FABER, Plaintiff,**

v.

**MENARD, INC., Defendant.**

**No. C 03–3034–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

June 17, 2003.

962

Elizabeth A. Katz, John Werner, Grefe & Sidney, Des Moines, IA, for defendant.

Mark D. Sherinian, Sherinian & Walker Law Firm, West Des Moines, IA, for plaintiff.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO COMPEL ARBITRATION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 965
 A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 965
 B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 968

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 968
 A. The Timeliness Of Faber's Resistance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 968
 B. The Merits Of Menard's Motion To Compel Arbitration . . . . . . . . . . . . . . . . . . . 969
 1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 969
 2. Prerequisites for arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 971
 3. Faber's "validity" challenges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 972
 a. Lack of consideration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 972
 i. Lack of mutuality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 972
 ii. Continued employment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 972
 b. Unconscionability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 972
 i. Adhesion contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 972

　　　　ii.　*Procedural and substantive unconscionability* .............. 974
　　4.　*Severability* ..................................................... 983
　C.　*Certification For Interlocutory Appeal* ................................. 985

III.　*CONCLUSION* ................................................... 986

Is the arbitration clause of the plaintiff's employment contract unconscionable? The plaintiff employee asserts that it is in response to the defendant employer's motion to compel arbitration of his age discrimination and retaliation claims in this action. The Supreme Court recently concluded in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), that arbitration clauses, in general, are enforceable in employment contracts, but left open the possibility that such arbitration clauses could still be subject to challenge under state contract law. The decision of the Ninth Circuit Court of Appeals on remand, *see Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir.2002), *cert. denied*, 535 U.S. 1112, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002), has, perhaps, had as great an impact as the Supreme Court's decision in *Circuit City*, because it put the issue of whether particular arbitration clauses are unconscionable as a matter of state law squarely in the spotlight. Indeed, the Ninth Circuit Court of Appeals held that the arbitration agreement at issue in that case was both procedurally and substantively unconscionable under California law. The issue of the unconscionability of the arbitration clause in the present plaintiff's employment agreement *under Iowa law* is now squarely in the spotlight here.

## I.　INTRODUCTION

### A.　Factual Background

This matter comes before the court on a pre-answer motion to compel arbitration. Nevertheless, it appears that certain facts are undisputed or, at least, that certain allegations in the Complaint, the defendant's Motion To Compel Arbitration, and the plaintiff's Resistance to that motion have a factual basis. Therefore, the court will survey the factual background to the present dispute as it can be gleaned from the parties' filings.

Plaintiff Steve Faber began his employment with defendant Menard, Inc., in 1981, and was eventually promoted to Store Manager of the Menards store in Mason City, Iowa. In February 2000, Faber traveled to Eau Claire, Wisconsin, for a meeting with Larry Menard, Operations Manager for Menard, Inc., and Ron Mehr, Personnel Manager, apparently concerning annual renewal of his employment contract. Faber was presented with a new version of his employment contract, some provisions of which he found objectionable. Specifically, he apparently stated objections to a new provision reducing his bonus percentage and to a provision concerning commercial contractors, which required Faber to pay a $200 deductible if there was an accident. When Faber would not sign the contract, Larry Menard allegedly told Faber that he could replace him with someone younger who would work for less pay and that he (Menard) could not change individual contracts. As a result of Larry Menard's comments, which Faber describes as "threats," Faber alleges that he felt compelled to sign the employment agreement as it was presented to him.

The employment agreement that Faber then signed, which is dated February 25, 2000, but which states that it is "effective" February 1, 2000, contains the following arbitration clause:

> In consideration of employment, or continued employment, or a promotion and

the compensation outlined in Part B of the agreement by Menards, Menards and Manager agree that all claims and disputes between them, including but not limited to:

Statutory claims arising under the

- Age Discrimination in Employment Act
- Fair Labor Standards Act
- Title VII of the Civil Rights Act of 1964
- Title I of the Civil Rights Act of 1991
- Americans with Disabilities Act
- Family Medical Leave Act, and

Non–Statutory claims

- contractual claims
- quasi-contractual claims
- tort claims and
- any and all causes of action arising under state laws or common law

shall be resolved by binding arbitration by the American Arbitration Association ("AAA") located at 225 North Michigan Avenue, Suite 2527, Chicago, IL 60601–7601, under its National Arbitration Rules. A copy of the Code, Rules and fee schedule of the American Arbitration Association may be obtained by contacting it at the address listed above.

Each party shall pay their own AAA fees, one half of the arbitrators fees and their own attorney's fees.

The parties agree that all arbitrators selected shall be attorneys. This provision shall supersede any contrary rule or provision of the forum.

Menards is engaged in commerce using the U.S. Mail and telephone Service. Therefore, the Agreement is subject to the Federal Arbitration Act, 9 U.S.C. Sections 1–14 as amended from time to time.

THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

Plaintiff's Affidavit, Exhibit (unnumbered), Partial Copy of Employment Agreement, ¶ 20. The final paragraph of the employment agreement also contained the following provision concerning "invalidity":

*Invalidity.* In case any one or more of the provisions of this Agreement should be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained in this Agreement will not in any way be affected or impaired thereby.

*Id.* at ¶ 25. Faber signed the bottom of both pages of the employment agreement on which portions of the quoted provisions appeared, indicating that he had read those pages, and also signed and dated the agreement in a signature block at the bottom of the second of those pages evidencing his acceptance of the agreement. *Id.*

Although Menard originally asserted that the controlling employment agreement was a different agreement, with a different arbitration clause, dated February 10, 1999,[1] Menard now concedes that

---

1. The arbitration clause of the February 10, 1999, employment agreement stated the following:

 **7. Remedy.** I agree that all problems, claims and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations section of the Grow With Menards Team Member Information Booklet which I have received.

If I am unable to resolve the dispute by these means, I agree to submit to final and binding arbitration. I understand that this Agreement is intended to protect the business and goodwill of Menard, Inc. and that a breach of this Agreement will irreparably and continually damage Menard, Inc. Therefore, I agree that Menard, Inc. may obtain an injunction to stop me from

the February 25, 2000, employment contract is the controlling agreement. Therefore, the court's analysis of the enforceability of any agreement to arbitrate the claims at issue in this litigation will relate to the February 25, 2000, employment agreement and its arbitration provisions.

In his Complaint in this action, which was filed April 14, 2003, Faber alleges that he was relieved from his position as Store Manager of the Mason City Menards store on May 15, 2001, and that he was terminated on June 5, 2001, when he would not accept a lesser position at another store.[2] Based on these events, Faber filed a complaint of age discrimination with the Mason City Human Rights Commission on June 14, 2001. His suspension and termination also form the factual basis for Faber's age discrimination claims in this lawsuit.

Thereafter, on July 10, 2001, Faber alleges in his Complaint that he was "trespassed" from the Mason City Menards store, which meant that he was banned from ever reentering that Menards location. In his resistance to Menard's motion to compel arbitration, Faber fills out the facts surrounding his "trespassing." He explains that, shortly after he was termi-

breaching or continuing to breach my obligations under this Agreement but that, after the injunction proceedings, the claims shall be submitted to final and binding arbitration. I agree that the prevailing party will be entitled to recover the reasonable attorneys' fees and costs incurred by such party in the course of prosecuting or defending any lawsuit or arbitration proceeding brought under the terms of this Agreement. Problems, claims or disputes subject to binding arbitration include, but are not limited to: Statutory claims arising under the Age Discrimination in Employment Act, Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, Americans with Disabilities Act, Family Medical Leave Act and Non–Statutory claims such as contractual claims, quasi-contractual claims, tort claims and any and all causes of action arising under state laws or common law.

These claims shall be resolved by binding arbitration by the American Arbitration Association ("AAA") located at 225 North Michigan Avenue, Suite 252 Chicago, IL 60601–7601 under its National Rules for the Resolution of Employment Disputes. A copy of the Code, Rules and fee schedule of the American Arbitration Association may be obtained by contacting it at the address listed above.

I agree that all arbitrators shall be attorneys. This provision shall supersede any contrary rule or provision of the forum state.

Menard, Inc is engaged in commerce using the U.S. Mail and telephone service. Therefore, the Agreement is subject to the Federal Arbitration Act, 9 U.S.C. Sections 1–14 as amended from time to time.

Defendant's Exhibit 1. The following warning appeared just above the signature line of this version of the employment agreement:

THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE READ THIS ENTIRE AGREEMENT AND I FULLY UNDERSTAND THE LIMITATIONS IT IMPOSES UPON ME, AND I UNDERSTAND THAT THIS AGREEMENT CANNOT BE MODIFIED, EXCEPT BY THE PRESIDENT OF MENARD, INC.

*Id.* Faber contends, and Menard does not appear to dispute, that a significant difference between the February 25, 2000, employment agreement and the February 10, 1999, employment agreement, at least with regard to the arbitration provisions, is that the earlier agreement required the plaintiff to pay the costs of arbitration only if the employer prevailed, but the later agreement, which is controlling here, requires the plaintiff to pay half of the arbitration costs, win or lose.

2. Although Faber contends that he was not terminated until June of 2001, and asserts that his contract was renewed—or at least reviewed—annually, neither party has submitted an employment agreement from a date later than February 25, 2000, so that the employment agreement that the parties agree is controlling had been in effect for more than a year at the time of Faber's termination.

nated, he and his daughter were shopping at the Menards store in Mason City, when they were approached by management personnel and informed that Faber was "trespassing." After demanding to see, and being shown, a "trespass" notice, Faber contends that he promptly left the store. In his Complaint, Faber alleges that, on July 11, 2001, he filed a second complaint with the Mason City Human Rights Commission in which he alleged retaliation, apparently based on this incident. Faber's retaliation claims in this lawsuit are also apparently based on this incident.

Faber alleges that he has obtained "right-to-sue" letters from both the Iowa Civil Rights Commission (ICRC) and the Equal Employment Opportunity Commission (EEOC). However, he does not allege in his Complaint, and does not contend in his resistance to Menard's motion to compel arbitration, that he has ever submitted either his age discrimination claims or his retaliation claims to arbitration.

### B. Procedural Background

Faber filed his Complaint in this matter on April 14, 2003, alleging age discrimination in violation of the Age Discrimination In Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216, (Counts I and II, respectively), and retaliation in violation of the same statutes (Counts III and IV, respectively). Menard has not answered the Complaint.

Instead, on May 7, 2003, Menard filed a Motion To Compel Arbitration And Stay Proceedings (docket no. 4), in which Menard seeks an order compelling arbitration and dismissing this action or, in the alternative, a stay of these proceedings pending completion of the arbitration process. Faber filed his Resistance (docket no. 6) on May 27, 2003, in which he contends, *inter*

*alia*, that the arbitration provisions of his employment agreement are unconscionable and, therefore, unenforceable. Menard then filed a Reply on May 29, 2003 (docket no. 8), in which Menard argued that Faber's resistance is untimely and otherwise without merit. However, on June 2, 2003, Menard was granted leave to file an Amended and Substituted Brief In Support Of Its Reply (Amended Reply Brief) (docket no. 12), in which Menard drops the portion of its original reply brief challenging the timeliness of Faber's Resistance.

Neither party requested oral arguments on the motion to compel arbitration and the matter is, therefore, fully submitted on the written submissions.

## II. LEGAL ANALYSIS

### A. The Timeliness Of Faber's Resistance

As mentioned above, Menard deleted from its Amended Reply Brief any argument that Faber's Resistance to Menard's Motion To Compel Arbitration was untimely and, consequently, should be disregarded by the court. The court also concludes that Faber's Resistance was timely by operation of Local Rule 7.1(e), which requires that a resistance to a motion be filed within fourteen days, and Rule 6(e) of the Federal Rules of Civil Procedure, which provides that a responding party has three extra days to respond when a motion is served by mail. Menard's Motion To Compel Arbitration bears a certificate of service by mail dated May 6, 2003, and Faber's Resistance bears a certificate of service by mail dated May 22, 2003, sixteen days later. Thus, Faber's Resistance was filed just within the time provided by the applicable rules. Therefore, the court turns to consideration of the parties' arguments on the merits of Menard's Motion To Compel Arbitration.

## B. The Merits Of Menard's Motion To Compel Arbitration

### 1. Arguments of the parties

Although Menard's Motion To Compel Arbitration originally relied on what Menard now concedes was the "wrong" employment agreement, the court will nevertheless summarize Menard's arguments in its opening brief, to the extent that they are applicable to the employment contract that Menard now acknowledges is the controlling agreement, the one dated February 25, 2000. Menard argues that the arbitration clause falls within the purview of the Federal Arbitration Act (FAA), because Menard is involved in interstate commerce. Menard also contends that a valid arbitration clause exists and that the present disputes fall within that arbitration clause. As to validity, Menard argues that the conditions for a valid contract under Iowa law were met, including an offer, acceptance, and adequate consideration. The adequate consideration upon which Menard relies consists of the offer and acceptance of continued employment and the mutual promises to resolve disputes according to the terms of the employment agreement. Menard also argues that the present disputes fall within the arbitration clause, because the agreement specifically provides for arbitration of age discrimination and retaliation claims under both the ADEA and the state law. Consequently, Menard argues that Faber is barred from pursuing his claims in this court without first submitting those claims to binding arbitration.

In response, Faber concedes that the arbitration clause falls within the purview of the FAA, because Menard is engaged in interstate commerce. However, he argues, first, that the controlling agreement is the February 25, 2000, employment agreement, not the 1999 agreement upon which Menard relied, on the ground that

the later agreement superseded the earlier one. Next, he argues that the requirements for a valid arbitration clause were *not* met. Faber agrees that Iowa contract law applies to this issue, and he concedes that there was an offer and acceptance, but he disputes that there was mutuality of obligation, so that, in his view, the contract is void for lack of sufficient consideration. Faber contends that, under the employment agreement, he was the only party who was bound to use arbitration, while Menard was free to use the courts for matters arising out of discrimination. Thus, Faber argues, Menard used the arbitration clause as a way to control the method of dispute resolution by employees, but left itself with other options. Specifically, Faber argues that "[n]owhere in the Employee Agreement does it require Menards to use the same method for conflict resolution that it required from the employee." *See* Plaintiff's Brief In Resistance To Defendant's Motion To Compel Arbitration And Stay Proceedings, 6. Faber argues, further, that employment and continued employment cannot suffice as adequate consideration, because "the entire Employee Agreement revolves around the arbitration clause," where everything that could be controversial is subject to arbitration by the employee, but not by the employer. Faber also argues that there is a lack of mutuality, because it is unclear who selects the arbitrator, which appears to leave the matter up to the employer.

Faber argues, as a further ground for invalidity of the arbitration clause, that it is unconscionable, relying, *inter alia*, on the decision of the Ninth Circuit Court of Appeals on remand in *Circuit City*, 279 F.3d at 893. First, he contends that the arbitration clause is unconscionable, because it is in a contract of adhesion. Specifically, he contends that he was not given the opportunity to negotiate any provision

of the employment agreement, but was instead "threatened" when he objected to certain terms. Faber appears to argue, in the first instance, that if the arbitration clause is in a contract of adhesion, that fact, standing alone, would render the arbitration clause unconscionable. Apparently in the alternative, Faber also argues that, at the very least, the adhesionary nature of the arbitration clause establishes the "procedural unconscionability" prong of the unconscionability analysis, owing to the inequality of bargaining power. Faber next argues that the arbitration clause is "substantively unconscionable," because it is "harsh and one-sided." In support of this contention, he argues that the arbitration clause compels only the employee, not the employer, to arbitrate claims. Furthermore, he asserts that the arbitration clause discourages employees from pursuing claims, because it compels each party to bear its own costs and attorney fees and half the costs of the arbitrator. He argues that this provision is particularly harsh to employees who have lost their jobs owing to wrongful conduct of the employer, because such employees cannot easily bear the costs of attempting to arbitrate their wrongful discharge claims. He relies on a decision of the District of Columbia Circuit Court of Appeals which he asserts holds that, where arbitration has been imposed by the employer and occurs only at the option of the employer, the arbitrator's fees should be borne solely by the employer. *See Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1484–85 (D.C.Cir.1997). He also contends that provisions of the arbitration clause requiring him to bear his own costs and attorney fees abrogate his statutory right to recover costs and attorney fees if he prevails on his claims in court. Finally, he contends that the objectionable portions of the arbitration clause cannot be severed without requiring the court to rewrite the arbitration agreement,

so that the arbitration clause must be found wholly invalid and unenforceable, citing *Circuit City*, 279 F.3d at 896.

In reply, Menard concedes that the controlling contract is the February 25, 2000, employment agreement. However, Menard rejects Faber's arguments concerning lack of consideration and unconscionability. First, Menard contends that, under the plain language of the arbitration clause in the employment agreement, *both* parties are bound to arbitrate their disputes. Thus, Menard argues that Faber's contentions concerning lack of consideration (and unconscionability) based on purported lack of mutuality necessarily fail. Furthermore, Menard argues that continued employment and mutual promises to resolve disputes according to the terms of the employment agreement necessarily establish adequate consideration under Iowa law.

Turning to Faber's unconscionability arguments, Menard contends that the contract is perfectly clear about who selects the arbitrator, because it invokes the National Arbitration Rules of the American Arbitration Association, which provide that the parties must agree on an arbitrator. Menard also argues that Faber's unconscionability argument on the basis that the employment agreement is a contract of adhesion fails, because the Iowa Supreme Court has recognized that the Federal Arbitration Act (FAA), which permits contracts of adhesion, preempts the statutory bar on arbitration clauses in contracts of adhesion in Iowa Code § 679A. *See Heaberlin Farms, Inc. v. IGF Ins. Co.*, 641 N.W.2d 816, 819 (Iowa 2002). Next, Menard contends that Iowa courts have not subscribed to the sweeping rule that requiring the employee to bear half the costs of arbitration renders an arbitration clause unconscionable and unenforceable. However, Menard cites no decision of an Iowa

court addressing that issue. Finally, Menard argues that, under Iowa law, the court has the authority to sever any objectionable provisions of the arbitration clause, citing *Frost v. State,* 172 N.W.2d 575 (Iowa 1969). However, Menard argues that the arbitration clause is neither illegal nor does it embody an illegal purpose, so that it does not require severance of any of its provisions.

### 2. Prerequisites for arbitration

■ In *Owen v. MBPXL Corporation,* 173 F.Supp.2d 905 (N.D.Iowa 2001), in addition to recounting the history of the Federal Arbitration Act (FAA) this court outlined the inquiry applied to a motion to compel arbitration, as follows:

> The court employs a two-part inquiry to determine "whether [a] dispute is 'arbitrable' before it orders the parties to proceed with arbitration." [*Hoffman v. Cargill, Inc.,* 968 F.Supp. 465, 470 (N.D.Iowa 1997)] (citing *Daisy Mfg. Co. v. NCR Corp.,* 29 F.3d 389, 392 (8th Cir.1994), in turn citing *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990), with accord in *Hodge Bros. v. DeLong Co.,* 942 F.Supp. 412, 415 (W.D.Wis.1996)); *accord Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 679 (8th Cir.2001); *Larry's United Super, Inc., v. Werries,* 253 F.3d 1083, 1085 (8th Cir.2001); *Keymer v. Mgmt. Recruiters Int'l, Inc.,* 169 F.3d 501, 504 (8th Cir. 1999). Under the first part, the court must ascertain whether a valid agreement to arbitrate exists between the parties. *Gannon,* 262 F.3d at 679. The court next determines whether the specific dispute falls within the scope of that valid agreement. *Id.* If the court answers these inquiries in the affirmative, under sections three and four of the FAA, the court must stay proceedings and compel the parties to submit their dispute to arbitration. *Lyster v. Ryan's*

*Family Steak Houses,* 239 F.3d 943, 945 (8th Cir.2001) (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding that the FAA mandates courts to direct parties to arbitration on issues to which a valid arbitration agreement has been signed); *Telectronics Pacing Sys., Inc. v. Guidant Corp.,* 143 F.3d 428, 433 (8th Cir.1998)). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.,* 470 U.S. at 218, 105 S.Ct. at 1241, 84 L.Ed.2d at 163.

*Owen,* 173 F.Supp.2d at 912; *accord Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677 (8th Cir.2001) ("Our role in determining whether a court should compel arbitration is limited. We must determine simply whether the parties have entered a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement. Once we conclude that the parties have reached such an agreement, the FAA compels judicial enforcement of the arbitration agreement.") (internal citations omitted). On the other hand, "[p]arties who have not agreed to submit their disputes to arbitration cannot be required to do so." *Id.* at 913 (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 941–43, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

Taking the second prong of the inquiry first, there appears to be no dispute between the parties that Faber's age discrimination and retaliation claims fall within the scope of the arbitration clause in this case, and the court agrees that they do. *See* Plaintiff's Affidavit, Exhibit (unnumbered), Partial Copy of Employment Agreement, ¶ 20 (identifying arbitrable

disputes as including a non-exclusive list of "Statutory claims arising under the ... Age Discrimination in Employment Act" and "Non–Statutory claims [including] any and all causes of action arising under state laws or common law"). Therefore, the "fighting issue" here is on the first prong of the inquiry, "whether a valid agreement to arbitrate exists between the parties." *See Owen*, 173 F.Supp.2d at 912 (citing *Gannon*, 262 F.3d at 679).

### 3. Faber's "validity" challenges

#### a. Lack of consideration

■ *i. Lack of mutuality.* Faber's first challenge to the validity of the arbitration clause in this case is that the clause is not supported by adequate consideration, where it lacks mutuality of obligation. Where a contract provides for mutual promises, each promise is a consideration for the other promise. *Federal Land Bank of Omaha v. Woods*, 480 N.W.2d 61, 65 (Iowa 1992). Thus, there is legal consideration in the form of mutual promises. *See, e.g., In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996). On the other hand, a lack of consideration means that no valid contract was ever formed. *Woods*, 480 N.W.2d at 66.

Faber's argument that there was no mutuality of obligation concerning arbitration in this case, however, fails upon examination of the arbitration clause in the parties' employment agreement. That agreement expressly provides that "Menards and Manager agree that *all claims and disputes between them* ... shall be resolved by binding arbitration." *See* Plaintiff's Affidavit, Exhibit (unnumbered), Partial Copy of Employment Agreement, ¶ 20 (emphasis added). Thus, contrary to Faber's assertions, he is not the only party bound to submit his claims to arbitration, and the arbitration provisions are not invalid for lack of mutuality.

■ *ii. Continued employment.* The arbitration clause of the parties' employment agreement also expressly states that the parties agree to arbitrate their disputes "[i]n consideration of employment, or continued employment, or a promotion and the compensation outlined in Part B of the agreement by Menards." *Id.* Menard argues that the parties' agreement to Faber's continued employment also constitutes sufficient consideration under Iowa law, and the court agrees. *See Owen*, 173 F.Supp.2d at 914 (under Iowa law, continued employment provides adequate consideration for a contract, citing *French v. Foods, Inc.*, 495 N.W.2d 768, 770 (Iowa 1993); *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 455 (Iowa 1989); and *McBride v. City of Sioux City*, 444 N.W.2d 85, 91 (Iowa 1989)).

Therefore, Faber's challenge to the validity of the arbitration clause on the basis of lack of consideration fails. The court turns, next, to Faber's unconscionability challenge.

#### b. Unconscionability

■ *i. Adhesion contract.* Faber's first argument that the arbitration clause in his employment agreement is unconscionable is that the arbitration clause is in a contract of adhesion. The Iowa Supreme Court recently explained in *Pennsylvania Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 813 (Iowa 2002), that "[a] contract of adhesion is described as one that is 'drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis to the weaker party who has no real opportunity to bargain about its terms.'" *Simoni*, 641 N.W.2d at 813 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. b, at 135 (Rev.1988); and citing in accord *Hofmeyer v. Iowa Dist. Ct.*, 640 N.W.2d 225, 230 (Iowa 2001)). In *Simoni*,

the Iowa Supreme Court also stated that, "under Iowa law an arbitration provision contained in a contract of adhesion ... is not enforceable." *Id.* (citing IOWA CODE § 679A.1(2)(a)).[3] In *Simoni,* the court found that the issue of whether or not the contract in question was a contract of adhesion could not be resolved until a factual record had been developed, because the court had before it "nothing more than speculation as to whether the agreements between Penn Life and the defendants qualify as adhesion contracts" and "[t]here is nothing in the pleadings that indicates who drafted the contracts or the circumstances under which they were signed." *Id.* at 814. On the record in Faber's case, however, there appears to be more than mere speculation about whether the circumstances establish that the employment contract containing the arbitration clause at issue was a contract of adhesion, where Faber has asserted facts suggesting that he was offered the contract on a "take-it-or-leave-it" basis and, moreover, was "threatened" with termination if he didn't sign the agreement as offered. Menard has responded to these allegations with a deafening silence.

On the other hand, as Menard asserts, the Iowa Supreme Court has also held, in *Heaberlin Farms, Inc. v. IGF Ins. Co.,* 641 N.W.2d 816 (Iowa 2002), that the provision of Iowa law invalidating arbitration clauses in contracts of adhesion is preempted by the FAA. In *Heaberlin Farms,* the Iowa Supreme Court stated the following:

The FAA does not exclude adhesion contracts. The Iowa statute [IOWA CODE § 679A.1(2)(a)], by excluding adhesion contracts, is in conflict with the FAA. Thus, if the federal act is applicable, it preempts the Iowa statute by operation of the Supremacy Clause.

*Heaberlin Farms,* 641 N.W.2d at 819. Menard argues that, in light of the preemption of § 679A.1(2)(a) by the FAA, Faber simply cannot rely on the argument that his employment contract is a contract of adhesion as a ground for invalidating the arbitration clause in that contract. The court concludes that Menard's argument goes further than the holding in *Heaberlin Farms,* standing alone, will allow.

As the Ninth Circuit Court of Appeals explained in *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889 (9th Cir.2002), *cert. denied,* 535 U.S. 1112, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002),

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds that exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). In determining the validity of an agreement to arbitrate, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, although

---

**3.** The court in *Simoni* also noted that the statute also provides that "a written agreement to arbitrate is not valid when it is part of ... a contract between an employer and an employee," which is the case here. *See Simoni,* 641 N.W.2d at 811 (citing IOWA CODE § 679A.1(2)(b)). However, Faber does not assert that the arbitration clause is unenforceable on this ground. This court need not decide the issue of whether the arbitration clause in question here is invalid, because it is

"part of ... a contract between an employer and an employee," but observes that this portion of IOWA CODE § 679A.1(2)(b) is probably also preempted by the FAA, in light of the United States Supreme Court's holding in *Circuit City* that, under the FAA, with the exception of contracts of employment of transportation workers, arbitration clauses, in general, are enforceable in employment contracts. *See Circuit City Stores, Inc.,* 532 U.S. at 119, 121 S.Ct. 1302.

"courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions," general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

*Circuit City*, 279 F.3d at 892 (emphasis in the original). Thus, while Faber cannot rely on the prohibition on arbitration clauses in contracts of adhesion in Iowa Code § 679A.1(2)(a), because that statute is a " 'state la[w] applicable *only* to arbitration provisions,' " *id.* (quoting *Doctor's Assocs., Inc.*, 517 U.S. at 687, 116 S.Ct. 1652), Faber may nevertheless rely on a "general contract defens[e] such as ... unconscionability ... grounded in state contract law" as a ground to invalidate the arbitration clause. *Id.* The question then becomes, is there a "general contract defense" under Iowa law to the effect that adhesion contracts are unconscionable?

▬ The answer to that question is no. The Iowa Supreme Court has explained the relationship between adhesion contracts and unconscionability, as follows:

> The determination of whether a contract is a contract of adhesion involves the issue of unconscionability. *Home Fed. Sav. & Loan Ass'n v. Campney*, 357 N.W.2d 613, 619 (Iowa 1984). "Standardized contracts ... drafted by powerful commercial units and put before individuals on the 'accept this or get nothing' basis, are carefully scrutinized by the courts for the purpose of avoiding enforcement of 'unconscionable' clauses." *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 180 (Iowa 1975) (quoting 6 A. Corbin, Corbin on Contracts § 1376, at 21 (1963)).

*Hofmeyer v. Iowa Dist. Court for Fayette County*, 640 N.W.2d 225, 229 (Iowa 2001). Thus, the *danger* of an adhesion contract is that it *might contain* unconscionable clauses, and adhesion contracts are *scrutinized* to avoid enforcement of unconscionable clauses. *Id.* However, the fact that a contract is one of adhesion does not necessarily make it unconscionable or unenforceable under Iowa law outside of the context of arbitration agreements and Iowa Code § 679A.1(2)(a). *See Home Fed. Sav. & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 619 (Iowa 1984) ("[E]ven though the mortgage can be characterized as a contract of adhesion with respect to paragraph 17 [a due-on-sale clause], this does not mean paragraph 17 is automatically unconscionable. *See Jim Hawk Chevrolet–Buick, Inc. v. Insurance Company of North America*, 270 N.W.2d 466, 468 (Iowa 1978)," adding, "Clearly a finding that a contract is adhesive does not require a determination of unconscionability. It merely alerts the court that the situation is one in which such a finding may be justified.... More is required to complete the case for unconscionability...."). Therefore, even if Faber proves that the arbitration clause was or was part of a contract of adhesion, that fact, standing alone, does not necessarily establish that the arbitration clause is unconscionable as a "general contract defense" under Iowa law.

▬ *ii. Procedural and substantive unconscionability.* "Unconscionability," however, is itself a "general contract defense" under Iowa law. *Federal Land Bank of Omaha v. Steinlage*, 409 N.W.2d 173, 174 (Iowa 1987) ("Unconscionability ... is a recognized defense to the enforcement of the contract.") (citing *Casey v. Lupkes*, 286 N.W.2d 204, 207 (Iowa 1979)); *Casey*, 286 N.W.2d at 207 ("We hold that the defense of unconscionability is available in any contract action."); *see also*

Iowa Code § 554.2302(1) (2001) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract...."); RESTATEMENT (SECOND) OF CONTRACTS § 209 (1979) (recognizing the doctrine of unenforceability of unconscionable contracts). Under Iowa law, "[t]he burden of proving that the contract is unconscionable is on the party claiming the invalidity of the contract unless it is unjust and unreasonable on its face." *Matter of Estate of Ascherl*, 445 N.W.2d 391, 392 (Iowa Ct.App.1989) (quoting *Rankin v. Schiereck*, 166 Iowa 10, 19, 147 N.W. 180, 181–82 (1914)); *accord Lakeside Boating & Bathing, Inc. v. State*, 402 N.W.2d 419, 422 (Iowa 1987).

▮ More specifically, to determine whether a party has met its burden to prove unconscionability, "the court should examine the factors of assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness." *Gentile v. Allied Energy Prods., Inc.*, 479 N.W.2d 607, 609 (Iowa Ct.App.1991) (citing *C & J Fertilizer v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 181 (Iowa 1975)); *Home Federal Sav. & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 618 (Iowa 1984) (also citing *C & J Fertilizer*). Other courts, such as the Ninth Circuit Court of Appeals in *Circuit City*, applying California law, have grouped similar factors into a two-pronged inquiry, which considers "procedural" and "substantive" unconscionability. More specifically, "procedural" unconscionability goes to "equilibrium of bargaining power between the parties and the extent to which the contract clearly discloses its terms," *see Circuit City*, 279 F.3d at 893; *and compare, e.g., Gentile*, 479 N.W.2d at 609 (identifying factors pertinent to a determination of unconscionability as including assent, unfair surprise,

notice, and disparity of bargaining power), while "substantive" unconscionability goes to "whether the terms of the contract are unduly harsh or oppressive." *See Circuit City*, 279 F.3d. at 893; *and compare, e.g., Gentile,* 479 N.W.2d at 609 (considering "substantive unfairness" as another factor in the determination of unconscionability).

▮ As to what the court will call the "procedural" unconscionability factors, when examining disparity of bargaining power, Iowa courts have considered such things as whether the parties were under any particular or differing financial pressures and whether they had engaged in similar transactions before. *See Gentile,* 479 N.W.2d at 609 ("The record reflects that the parties were of equal bargaining power. Frank Pagano testified that he was not under any financial pressure and that he had 'sold' accounts before."); *Home Fed. Sav. & Loan Ass'n,* 357 N.W.2d at 619 (considering whether the complaining party was "in no position to bargain," but also considering whether different provisions were actually available from any other person or entity offering a comparable transaction). They have also considered which party drafted the agreement, whether the party challenging the agreement had used a similar agreement before, and whether the parties were offered, or were aware of, a right to consult their own attorneys before entering into the agreement. *See id.; Home Fed. Sav. & Loan Ass'n,* 357 N.W.2d at 619 (as to "unfair surprise," considering whether the parties had time to read the contract and ask questions about it before signing it, and whether they were invited to retain counsel, but chose not to have their lawyer examine the contract for them). "Procedural" unconscionability—particularly as to relative bargaining power—also plainly encompasses consideration of whether or not the agreement was or was

part of an adhesion contract. *See Home Fed. Sav. & Loan Ass'n,* 357 N.W.2d at 619; *accord Circuit City,* 279 F.3d at 893 (concluding that, under California law, whether or not a contract is one of adhesion goes to whether or not it is procedurally unconscionable). The factors pertinent to "procedural" unconscionability— such as "notice" and "unfair surprise"— also encompass such factual considerations as whether the language of the challenged clause or agreement was "clear and easy to read," even to the extent of considering the size of the print and location of challenged clauses in the contract. *See id.* (also citing *C & J Fertilizer,* 227 N.W.2d at 179, as holding that a contract was unconscionable where the offending language was in small print and not where normally expected); *C & J Fertilizer,* 227 N.W.2d at 179 (noting that "[t]he policies in question contain a classic example of that proverbial fine print (six point type as compared with the twenty-four point type appearing on the face of the policies ...) which 'becomes visible only after the event,'" and also noting that the clause in question "instead of appearing logically in the 'exclusions' of the policy" instead "pose[d] as a part of an esoteric definition of burglary").

As to "substantive" unconscionability, Iowa courts have explained that "a bargain will be deemed unenforceable [on unconscionability grounds] if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Lakeside Boating & Bathing, Inc.,* 402 N.W.2d at 422 (quoting *Farmers Savings Bank v. Gerhart,* 372 N.W.2d 238, 244 (Iowa 1985), in turn quoting *Casey,* 286 N.W.2d at 207); *Farmers Sav. Bank,* 372 N.W.2d at 244 (same) (also citing *Casey* as in turn quoting *Hume v. United States,* 132 U.S. 406, 411, 10 S.Ct. 134, 33 L.Ed. 393 (1889)); *Home Fed. Sav. & Loan Ass'n,* 357 N.W.2d at 619 (same) (citing *Smith v. Harrison,* 325 N.W.2d 92, 94 (Iowa 1982)); *Federal Land Bank of Omaha v. Reinhardt,* 428 N.W.2d 672, 673 (Iowa Ct.App.1988) (same) (also citing *Smith,* 325 N.W.2d at 94). More specifically, Iowa courts have considered whether "the ... agreement was so one-sided as to meet the measure of unconscionability," *see Lakeside Boating & Bathing, Inc.,* 402 N.W.2d at 422, and they have equated "unconscionability" with contract terms that are "harsh" or "oppressive." *See C & J Fertilizer,* 227 N.W.2d at 180–82.

As to "procedural" unconscionability of the arbitration clause at issue here, it is true that Faber cannot complain about "unfair surprise" or "lack of notice" of the arbitration clause, *see, e.g., Gentile,* 479 N.W.2d at 609 (identifying factors pertinent to a determination of unconscionability as including unfair surprise and notice), where the clause is in the same print as all of the other provisions of the contract, with the exception that it carries an even more conspicuous and specific warning that the contract contains an arbitration provision in all capital letters; the arbitration clause appears near the end of the agreement, concluding only half a page above Faber's signature signifying his acceptance of the employment agreement; and Faber also signed each page of the agreement containing pertinent terms, signifying that he had read those provisions. *See id.* (also citing *C & J Fertilizer,* 227 N.W.2d at 179, as holding that a contract was unconscionable where the offending language was in small print and not where normally expected). Moreover, he does not deny that his immediately prior employment contract also contained an arbitration clause. *See id.* (considering whether the complaining party had entered into similar transactions before).

However, Faber has established "procedural" unconscionability on the basis of his demonstration of his relative lack of bargaining power, when presented with a contract of adhesion. *See id.* (disparity in bargaining power is a factor in determining whether a contract is unconscionable); *Home Fed. Sav. & Loan Ass'n,* 357 N.W.2d at 619 (considering whether the contract in question was an adhesion contract as part of its inquiry into unconscionability). Faber avers—and Menard does not dispute—that he was plainly told that he was in no position to bargain: he could either sign the contract as it stood, or be replaced by a younger employee who would cost Menard less, with the added stinger that he was told that Menard would not, or that Larry Menard could not, negotiate terms of individual contracts. *Cf. Home Fed. Sav. & Loan Ass'n,* 357 N.W.2d at 619 (considering whether the complaining party was "in no position to bargain"). Menard has not attempted to show that arbitration clauses, or other terms of the employment agreement that it offered Faber, were so common in employment contracts generally, or in home improvement supply store management contracts specifically, that Faber would likely have encountered similar terms from any other party interested in a comparable transaction. *Id.* (also considering whether different provisions were actually available from any other person or entity offering a comparable transaction). Moreover, Menard is a large national company, and Faber was but one employee of that company, and even if he was a "managerial" employee, he was in the relatively low position of store manager for a multi-store, multi-state chain, so that Faber was not only at a distinct disadvantage in bargaining power, but was also subject to very different financial pressures than Menard. *See Gentile,* 479 N.W.2d at 609 (considering whether the parties were under any particular financial pressures); *see also Circuit City,* 279 F.3d at 893 (noting that the employment agreement for all new employees with a national chain store was "a prerequisite for employment" that the applicants were not permitted to modify)

In the court's view, the fact that the provisions that Faber originally told Menard that he found objectionable did *not* include the arbitration provision—but instead involved "bonus" and "deductible payment" provisions—does not undermine the conclusion that the adhesive nature of the employment agreement weighs against enforcement of the arbitration clause. First, as remarked above, the danger of a contract of adhesion is that it will force upon a party unconscionable provisions. *See Hofmeyer,* 640 N.W.2d at 229; *Home Fed. Sav. & Loan Ass'n,* 357 N.W.2d at 619 (a finding that a contract is one of adhesion "alerts the court that the situation is one in which ... a finding [of unconscionability] may be justified"). Second, Faber must satisfy the court that the arbitration provisions are *themselves* substantively unconscionable.

█ The court also concludes that Faber has established "substantive" unconscionability of the arbitration provisions of his employment agreement, but not for the reason that he primarily relies upon, which was lack of mutuality of obligations concerning arbitration. As explained above, the plain language of the February 25, 2000, employment agreement provides that *both* Menard and Faber were obligated to arbitrate "all claims and disputes between them," including those in a non-exclusive list of statutory and non-statutory federal and state-law claims. *See* Plaintiff's Affidavit, Exhibit (unnumbered), Partial Copy of Employment Agreement, ¶ 20. Thus, the arbitration clause in Faber's employment agreement does not involve the sort of fatal "asymmetry" concerning arbitrable

claims that troubled the Ninth Circuit Court of Appeals in *Circuit City. See Circuit City,* 279 F.3d at 893.

On the other hand, the arbitration scheme in Faber's contract *does* suffer from other elements of substantive unconscionability recognized in or suggested by the decision of the Ninth Circuit Court of Appeals in *Circuit City.* For example, Faber complains that the arbitration clause is substantively unconscionable, because it compels him to pay half of the arbitrator's fees and to bear his own costs of the arbitration, including his own attorney fees. In *Circuit City,* the Ninth Circuit Court of Appeals observed,

> The DRA also requires the employees to split the arbitrator's fees with [the employer]. This fee allocation scheme alone would render an arbitration agreement unenforceable.

*Circuit City,* 279 F.3d at 893. Although Menard asserts baldly that Iowa law does not recognize the unfairness of splitting costs of arbitration between an employee and his or her employer, Menard cites no decision of an Iowa court rejecting the proposition stated in *Circuit City.* However, Menard is correct that the question is whether the cost and fees provisions of the arbitration clause are substantively unconscionable *under Iowa law.*

■ The question of substantive unconscionability under Iowa law is whether "a bargain … is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Lakeside Boating & Bathing, Inc.,* 402 N.W.2d

at 422. While there is some facial "fairness" to each party bearing half the costs of arbitration in many commercial settings, where parties with equal bargaining power are bargaining at arm's length, the reality in the circumstances of employment contracts, at least for laborers and lower level management personnel in retail sales, is that "no man in his senses" would agree to bear half the costs of a process that he quite clearly could ill afford as compared to his or her employer, and a national chain store employer in particular. This is all the more true if the dispute to be submitted to arbitration would potentially involve the employee's livelihood and, hence, the employee's ability to meet daily expenses, let alone the expenses of arbitrating the dispute. This patent unfairness, under the circumstances, is also such that "no honest and fair man" or company, in Menard's position, "would accept" from an employee. *Lakeside Boating & Bathing, Inc.,* 402 N.W.2d at 422.

Similarly, the provisions requiring an employee to bear his or her own costs and half the arbitrator's costs would likely make any recovery in arbitration a "Pyrrhic victory," at best.[4] The court is well aware of the number of times that an award of costs and attorneys' fees to a prevailing plaintiff in a federal discrimination case nears or exceeds the plaintiff's recovery for backpay, compensatory damages, and even punitive damages. It is for this reason that the federal antidiscrimination statutes provide for fee-shifting to prevailing plaintiffs, and much more narrow fee-shifting for prevailing defendants. *See, e.g., Sinyard v. Commissioner of the*

---

4. WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (2d ed. unabridged, 1940) defines a "Pyrrhic victory" as follows:

 A victory or success gained at too great cost;—so called in allusion to the exclamation of Pyrrhus, king of Epirus, after his defeat of the Romans at Asculum (or Auscu-

 lum) in Apulia (279 B.C.), in gaining which he lost a large part of his army: "One more such victory over the Romans, and we are utterly undone."

 *See also Merriam–Webster's Word for the Wise,* Script for August 21, 1997, available at *www.m-w.com/textonly/wftw/97aug/82197.*

*Internal Revenue*, 268 F.3d 756, 763 (9th Cir.2001) ("[T]he purpose of fee-shifting provisions, like the one in the ADEA, is not only to permit plaintiffs without resources to pursue claims but to encourage meritorious civil rights litigation by defraying its cost."), *cert. denied sub nom. Sinyard v. Rossotti*, 536 U.S. 904, 122 S.Ct. 2357, 153 L.Ed.2d 179 (2002). Even assuming that arbitration would be "cheaper" for both parties, the "own costs" provision and the "half the arbitrator's costs" provision in the arbitration clause are still manifestly unfair, where the parties' resources, and probably their immediate access to counsel, are so disparate.

Similarly, even assuming that a plaintiff could otherwise obtain the full extent of remedial relief in the context of arbitration under the Menard employment agreement to which he or she would be entitled in a judicial action under governing law, the plaintiff cannot be made "whole" in arbitration where the costs imposed upon him or her to vindicate a claim are so vastly different. *Cf. Circuit City*, 279 F.3d at 894–95 (considering whether arbitration permitted the relief available to employees as compared to the relief to which they were entitled under the controlling statutes in judicial proceedings). Moreover, the arbitration provisions of the Menard employment contract impose such harsh and oppressive burdens upon an individual plaintiff that they will plainly have an unfair chilling effect upon employees who might otherwise pursue valid claims.

A decision of the Eighth Circuit Court of Appeals applying an identical standard of substantive unconscionability under Missouri law, *see Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943 (8th Cir. 2001), is not to the contrary. In *Lyster*, the court noted that the applicable standard of unconscionability was the following:

Pursuant to Missouri law, "[a] contract is substantively unconscionable if there is undue harshness in the terms of the contract. Or, as more colorfully stated, an unconscionable contract is one, such as no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other, ....." *Killion v. Bank Midwest, N.A.*, 987 S.W.2d 801, 810 (Mo.Ct.App.1998) (internal quotation marks and citations omitted).

*Lyster*, 239 F.3d at 947. This formulation is precisely the same as the standard articulated by Iowa courts, as stated above. *See, e.g., Lakeside Boating & Bathing, Inc.*, 402 N.W.2d at 422. In *Lyster*, the court observed that it had "recognized the potential that substantial arbitration fees may make an arbitration agreement unconscionable." *See Lyster*, 239 F.3d at 947 (citing *Dobbins v. Hawk's Enters.*, 198 F.3d 715, 717 (8th Cir.1999)). However, the court rejected the plaintiff's contention about the unconscionability of the cost and fees provision of the arbitration agreement at issue in that case, as follows:

Lyster has not established on the record before us that undue harshness exists in the terms of the Agreement in light of Missouri law governing unconscionability. *See Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90–92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000) (holding the party seeking to invalidate an arbitration agreement because of prohibitive arbitration fees bears the burden of proof and the possibility of such party incurring prohibitive costs is too speculative to invalidate an arbitration agreement where the record reveals only that the agreement is silent on the subject of arbitration costs).

*Lyster*, 239 F.3d at 947. Here, however, Faber has *not* failed to sustain his burden of proof, because the arbitration clause is

*not* silent on the subject of arbitration costs, nor is the extent of those costs too speculative. To the contrary, the arbitration clause expressly provides not only that Faber must bear his own costs and attorney fees, but must also bear half of the arbitrator's costs, win or lose. *See* Plaintiff's Affidavit, Exhibit (unnumbered), Partial Copy of Employment Agreement, ¶ 20 ("Each party shall pay their own AAA fees, one half of the arbitrators fees and their own attorney's fees.").[5]

Other decisions, besides the decision of the Ninth Circuit Court of Appeals in *Circuit City,* also support this court's conclusion. Not surprisingly, some of those other decisions are also from the Ninth Circuit Court of Appeals. Most recently, in *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165 (9th Cir.2003), the Ninth Circuit Court of Appeals reiterated its conclusion that the cost-splitting provision of the Circuit City arbitration agreement were unconscionable. *See Ingle,* 328 F.3d at 1177 (citing *Circuit City,* 279 F.3d at 894). The court's further analysis of the issue in *Ingle* consisted of the following:

> Although in [*Circuit City,* 279 F.3d at 894,] we evaluated an older version of the arbitration agreement, the version we review here contains the same provision that "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award." Moreover, the arbitration agreement provides that "the Arbitrator may require the Associate to pay Circuit City's share of the costs of arbitration and incidental costs" should Circuit City prevail at arbitration. Under Circuit City's

arbitration agreement, even an employee who has succeeded on her claim against Circuit City could be held liable for her share of the costs of the arbitration, because the arbitrator's authority to require Circuit City to pay in such circumstances is discretionary. Furthermore, the Circuit City arbitration agreement provides that if an employee does not succeed on her claim, the arbitrator has the discretion to charge the employee for Circuit City's share of the arbitrator's services.

> By itself, the fact that an employee could be held liable for Circuit City's share of the arbitration costs should she fail to vindicate employment-related claims renders this provision substantively unconscionable. Combined with the fact that Circuit City's fee-splitting scheme would sanction charging even a successful litigant for her share of arbitration costs, this scheme blatantly offends basic principles of fairness. *See Ting [v. AT & T],* 319 F.3d [1126,] 1151 [(9th Cir.2003)]; *Armendariz,* 24 Cal.4th at 110–11, 99 Cal.Rptr.2d 745, 6 P.3d at 687–88. Because Circuit City's cost-splitting provision is harsh and unfair to employees seeking to arbitrate legal claims we conclude that it is substantively unconscionable.

*Ingle,* 328 F.3d at 1177–78 (footnotes omitted). The court in *Ingle* also suggested that the fact that such cost-splitting provisions would undermine Congress's intent in enacting civil rights statutes, because it would preclude plaintiffs from vindicating their rights under those statutes, supported its conclusion regarding unconscio-

---

**5.** The arbitration clause at issue here also requires that all arbitrators be attorneys. *See id.* Whatever the merits of such a requirement, the requirement of attorney-arbitrators would likely increase the costs of arbitration, and hence the employee's share of costs to arbitrate any dispute, over arbitration by non-

attorneys, because the present National Rules for the Resolution of Employment Disputes provide, in part, that "[a]rbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation." National Rules for the Resolution of Employment Disputes (as amended November 1, 2002), Rule 40.

nability. *Id.* at 1178 n. 17.[6] The court also rejected the employer's contention that provisions limiting the employee's liability for fees made the arbitration agreement "conscionable":

> Although Circuit City has included provisions in the arbitration agreement limiting an employee's liability for fees, we again reject the provisions because "the default rule is that employees will share equally in the cost of arbitration. As a result, we cannot interpret the agreement to prohibit sharing costs, as the court did in *Cole*, 105 F.3d at 1485, or find the issue of fees too speculative, as in *Green Tree [Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)]." [*Circuit City*], 279 F.3d at 895 n. 5.

*Ingle*, 328 F.3d at 1178 n. 18.

Similarly, somewhat earlier, the Ninth Circuit Court of Appeals rejected another arbitration agreement as substantively unconscionable, because of fee-splitting provisions, in *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 784–86 (9th Cir.2002). In *Ferguson*, the court relied on the fact that the arbitration scheme at issue "imposes multiple fees which would bring the cost of arbitration for [the employee] into the thousands of dollars," as well as its prior determination in *Circuit City*, 279 F.3d at 894, "that a fee allocation scheme which requires the employee to split the arbitrator's fees with the employer would alone render an arbitration agreement substantively unconscionable."

*Ferguson*, 298 F.3d at 785 (also rejecting the employer's argument that it had altered the arbitration scheme to eliminate the offending provisions after the plaintiff employee signed the agreement, but before the dispute in question arose, because the employer had not properly modified the arbitration agreement to include the new provisions).

The decision of the federal district court in *Cooper v. MRM Investment Co.*, 199 F.Supp.2d 771 (M.D.Tenn.2002), is also in accord with this court's conclusion about the unconscionability of the cost– and fee-splitting provisions of the arbitration clause in Faber's employment agreement. In *Cooper*, the court, relying in part on the decision of the Ninth Circuit Court of Appeals in *Circuit City*, held that an arbitration agreement was "both oppressive to the weaker party and unconscionable." *Cooper*, 199 F.Supp.2d at 778. More specifically, like this court, the court in *Cooper* noted that "[t]he pressure facing a prospective employee coupled with the uniform incongruity in bargaining positions between the employer and employee" rendered the arbitration agreement in question a contract of adhesion. *Id.* at 779. The court also recognized that "[c]ourts have held that requiring the plaintiff to pay for the right to vindicate their federal substantive rights would amount to an insurmountable obstacle," which would render the arbitration agreement unconscionable. *Id.* at 781. Even though the arbitration agreement at issue in *Cooper* was itself "silent" on the issue of

---

**6.** The court in *Ingle* cited the following decisions as indirectly supportive of its conclusion that the sharing of arbitration costs was substantively unconscionable: *Blair v. Scott Specialty Gases*, 283 F.3d 595, 605–06 (3d Cir. 2002) (holding that an arbitration agreement "would undermine Congress's intent" in enacting civil rights statutes if it prevented "employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require[d] them to pay for a judge in court") (quotations omitted); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1484 (D.C.Cir.1997) (noting in the context of an arbitration agreement that the court was "unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear her or his case"). *See Ingle*, 328 F.3d at 1178 n. 17.

the parties' responsibilities for fees and costs, the court found that the applicable arbitration rules, the same AAA rules applicable to arbitration under the Menard scheme, "impose a number of fees and costs that Plaintiff would have to bear as the 'initiating party.' Requiring a party to pay fees and costs, over and above what that party would have to pay in a court, may deprive that party of the right to vindicate his or her rights," and the court was convinced by the plaintiff's affidavit that "she will be unable to pay the high costs of arbitration." *Id.* The court also rejected the defendant's argument that its agreement to pay all of the costs associated with arbitration in that case mooted the plaintiff's argument, because allowing a defendant to sever certain provisions when they were challenged would encourage overreaching initially, by "crafting questionable arbitration agreements" to deter potential plaintiffs. *Id.* at 782.[7]

As *Ingle* suggests, decisions declining to hold that fee– or cost-splitting provisions render arbitration agreements in the employment context unconscionable most often rely on a conclusion that the issue of fees or costs under the particular arbitration agreement in question was too speculative. *See, e.g., Adkins v. Labor Ready, Inc.,* 303 F.3d 496, (4th Cir.2002) (recognizing that "[i]t is certainly possible that 'the existence of large arbitration costs could preclude a litigant ... from effec-

tively vindicating her federal statutory rights in the arbitral forum,'" citing *Green Tree Fin. Corp.,* 531 U.S. at 90, 121 S.Ct. 513, but holding that the plaintiff employee "ha[d] not come close to satisfying [his] burden" of "'showing the likelihood of incurring such costs,'" again citing *Green Tree,* 531 U.S. at 92, 121 S.Ct. 513); *Dumais v. American Golf Corp.,* 150 F.Supp.2d 1182, 1189–90 (D.N.M.2001) (holding that, where the arbitration agreement was "silent" on fee-splitting, and the costs imposed upon the plaintiff by the AAA were not prohibitive, the plaintiff had "presented little evidence to indicate that arbitration would be prohibitively expensive," and the fees and costs of arbitration did not render the arbitration scheme unconscionable); *Quinn v. EMC Corp.,* 109 F.Supp.2d 681, 685 (S.D.Tex.2000) (rejecting, as a general proposition, the argument that requiring a plaintiff employee to bear part of the costs of arbitration rendered the arbitration agreement unconscionable, and holding that the fact that the arbitrator was authorized to award reasonable fees if the plaintiff employee prevailed showed that it was simply not clear that the plaintiff would have to pay anything at all). However, as this court explained above, Faber *has* shown that he will necessarily incur substantial costs—both his own and half the costs of the arbitrator— to attempt to vindicate his rights in the arbitral forum.

---

**7.** The unconscionability of cost– and fee-splitting provisions in arbitration clauses has been recognized in contexts other than employment, particularly where the circumstances involve inequality of bargaining power or financial resources between the parties. *See, e.g., Ting v. AT & T,* 319 F.3d 1126, 1151 (9th Cir.2003) (concluding that fee-splitting provisions in a contract between a residential customer and a long-distance telecommunications company were unconscionable, because they imposed greater costs on the customer than he or she might otherwise have to bear

to vindicate rights); *Torrance v. Aames Funding Corp.,* 242 F.Supp.2d 862, 865–66 (D.Or. 2002) (an arbitration agreement between a mortgagor and a mortgage refinance company was unconscionable where it required the mortgagor to pay arbitrator fees); *Luna v. Household Finance Corp. III,* 236 F.Supp.2d 1166, 1182–83 (W.D.Wash.2002) (an "arbitration rider" in a debt consolidation loan contract between a debtor and a lender was unconscionable where it imposed prohibitively expensive arbitration costs on the debtor).

The court concludes that Faber has shown that the arbitration clause in Faber's February 25, 2000, employment agreement is both "procedurally" and "substantively" unconscionable. Thus, the question becomes whether the arbitration provisions are unenforceable in their entirety, or only to the extent that they are unconscionable.

### 4. Severability

 Menard argues that, even if the court finds that some parts of the arbitration clause are unconscionable, the court should simply sever those parts pursuant to the "invalidity" provision of the employment agreement, and enforce the arbitration clause to the extent that it is "conscionable." Faber counters that doing so would require rewriting of the arbitration clause to an extent that is inappropriate for the court to undertake, because the unconscionable portions taint the entire arbitration clause with illegality.

 The court notes, first, that Iowa law recognizes that unconscionable provisions of a contract can be severed and the contract otherwise enforced. *See, e.g., C & J Fertilizer*, 227 N.W.2d at 180 (considering "[t]he rule of selective elimination of unconscionable provisions"); *see also Sunset Mobile Home Park v. Parsons*, 324 N.W.2d 452, 457 (Iowa 1982) ("[W]e ... note that even if the mobile home rules were unconscionable, the conscionable provisions of the lease would nonetheless be enforceable.") (citing *C & J Fertilizer*, 227 N.W.2d at 180).[8] Moreover, the employment contract at issue here expressly provides that, "In case any one or more of the provisions of this Agreement should be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained in this Agreement will not in any way be affected or impaired thereby." Plaintiff's Affidavit, Exhibit (unnumbered), Partial Copy of Employment Agreement, ¶ 25.

Even supposing that Iowa law or the parties' contract permits a sort of "line item veto" of specific portions of the arbitration clause, rather than extirpation of the arbitration clause as a whole, on the basis of unconscionability of some portions of that arbitration clause, the court is persuaded that "partial enforcement" of the arbitration clause is inappropriate here. Again, the court is guided by the decision of the Ninth Circuit Court of Appeals in *Circuit City*. In *Circuit City*, the court noted that, under California law, "courts have the discretion to sever an unconscionable provision or refuse to enforce the contract in its entirety." *See Circuit City*, 279 F.3d at 895. As noted above, the same is true under Iowa law. In deciding which course to take, the court in *Circuit City* found that the decision of the California Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000), counseled consideration of the "central purpose" of the contract. *See Circuit City*, 279 F.3d at 895. In *Armendariz*, the court observed that severance was appropriate only if the illegality was collateral to the "central purpose" of the contract, and the illegal provision could be extirpated from the contract, but that the contract as a whole was unenforceable, if the "central purpose" of the contract was tainted with illegality. *See id.* Where the contract at issue in *Circuit City* was a company "Dispute Resolution Agreement" (DRA), not an arbitration clause in an employment contract, the Ninth Circuit

---

**8.** *Frost v. State*, 172 N.W.2d 575 (Iowa 1969), which Menard cites for this proposition is inapposite, because it involves severability of unenforceable provisions of a *statute*.

Court of Appeals found that the objectionable provisions of the DRA—limitations on damages, a fee-sharing scheme, and other unilateral aspects, including imposition of arbitration only on employee claims—ran throughout the agreement and defined the scope of the matters that were covered. *Id.* at 896. Removing these provisions, the court found, "would go beyond mere excision to rewriting the contract, which is not the proper role of this Court." *Id.* Therefore, the Ninth Circuit Court of Appeals held that the entire arbitration agreement was unenforceable. *Id.; accord Ferguson,* 298 F.3d at 787–88 (also declining to sever or limit offending provisions of an arbitration agreement). *But see Quinn,* 109 F.Supp.2d at 686 (holding that proposed invalidation of the entire arbitration agreement, even if the court were convinced that the plaintiff could not afford to pay for the arbitration proceedings, was "unnecessarily radical," because the court could instead simply nullify the fee provisions of the arbitration agreement and force the defendant employer to bear the expense of arbitration).

In this case, where the arbitration clause is only part of an employment contract, not a separate agreement, it is still clear that the *Circuit City* decision, and the decisions of Iowa courts, would permit excision of the arbitration clause, and enforcement of the remaining provisions of the employment agreement, because *employment,* not *arbitration,* is the "central purpose" of the agreement as a whole. However, where, as here, the arbitration clause is only part of a larger employment agreement, the question is, should any provisions *of the arbitration clause* be enforced, where some of those provisions are unconscionable? In this context, it seems reasonable to the court to examine the "central purpose" of the arbitration clause, rather than the "central purpose" of the employment contract as a whole, to determine whether or not the central purpose of the arbitration clause is "tainted with illegality." *Cf. id.*

The court concludes that the "central purpose" of the arbitration clause is, obviously, arbitration rather than judicial determination of disputes between the company and the employee. However, the court also finds that this "central purpose" is "tainted with illegality," and the arbitration clause as a whole is consequently unenforceable, because the unconscionable provisions concerning fees and costs define the whole arbitration scheme. Menard, the drafter of the employment agreement and its arbitration clause, was content to leave nearly all other details concerning the arbitration to the American Arbitration Association ("AAA") under its National Arbitration Rules. *See* Plaintiff's Affidavit, Exhibit (unnumbered), Partial Copy of Employment Agreement, ¶ 20.[9] Indeed, the fees and costs provision of the arbitration clause in the February 25, 2000, employment agreement is the most significant change from the arbitration clause in the February 10, 1999, which required the plaintiff to pay the costs of arbitration only if the employer prevailed, suggesting the importance of the revised provision to the arbitration scheme as conceived by Menard. Removing these provisions from the arbitration clause would go beyond mere excision to rewriting the arbitration clause and, more importantly, reforming the entire arbitration scheme, which is beyond the proper role of this court. *Cf. Circuit City,* 279 F.3d at 896. The court holds that the arbitration clause may be severed

---

**9.** The only other exception is the provision requiring that all arbitrators be attorneys.

*See id.*

in its entirety from Faber's employment agreement, because it is unconscionable, but the court declines to enforce piecemeal only the "conscionable" provisions of the arbitration clause.

The arbitration clause of Faber's employment agreement is unenforceable in its entirety, because it is unconscionable.

## C. Certification For Interlocutory Appeal

 The court deems it appropriate to consider *sua sponte* whether the denial of Menard's motion to compel arbitration should be certified for interlocutory appeal. The pertinent statute, 28 U.S.C. § 1292(b), provides for interlocutory appeal as follows:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made

to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b) (emphasis in the original). As the Eighth Circuit Court of Appeals has observed, the statute provides for certification of controlling questions of law by the district court for interlocutory appeal in circumstances where an appeal is otherwise unavailable. *City of Fort Madison, Iowa v. Emerald Lady,* 990 F.2d 1086, 1088 n. 4 (8th Cir.1993). However, the appellate court must, upon certification, decide, in its discretion, whether to permit the appeal on the question certified. *Id.*[10]

In *Moland v. Bil–Mar Foods,* 994 F.Supp. 1061 (N.D.Iowa 1998), this court summarized the standards for an interlocutory appeal pursuant to § 1292(b), as articulated by the Eighth Circuit Court of Appeals in *White v. Nix,* 43 F.3d 374 (8th Cir.1994):

The court [in· *White v. Nix*] held that "[t]he requirements of § 1292(b) are jurisdictional," and the statute should be used with care to avoid piece-meal appeals. *White,* 43 F.3d at 376. Thus, the court stated that § 1292(b) " 'should and

---

**10.** Because § 1292(b) provides for appeal of orders otherwise unappealable, and thus provides an avenue for resolving disputed and controlling questions of law, the resolution of which will materially further the litigation, the appellate court reviews *de novo* the questions of law certified by the district court. *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 400 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). The nature and scope of the appellate court's review is not rigidly determined by the certified questions, however. *Id.* (citing *In re Oil Spill by the Amoco Cadiz,* 659 F.2d 789, 793 n. 5 (7th Cir.1981)). The appellate court

remain[s] free to consider " ' "such questions as are basic to and underlie" ' " the questions certified by the district court. [*In re Oil Spill by the Amoco Cadiz,* 659 F.2d at 793 n. 5] (quoting *Helene Curtis Indus., Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1335 (7th Cir.1977) (quoting 9 J. Moore, *Moore's Federal Practice* ¶ 110.25[1], at 270)); *Merican, Inc. v. Caterpillar Tractor Co.,* 713 F.2d 958, 962 n. 7 (3d Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).
*Simon,* 816 F.2d at 400.

will be used only in exceptional cases where a decision on appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases.' " *Id.* (quoting S.Rep. No. 2434, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5260). Thus, the statute should be used "sparingly" and the burden, on the movant, is a heavy one to show that the case is an "exceptional" one in which immediate appeal is warranted. *Id.* Nonetheless, the court's grant of interlocutory appeal is reviewed for abuse of discretion. *Id.* (finding abuse of discretion in that case in failure to consider whether the appeal involved a controlling question of law.). The court therefore reiterated that § 1292(b) establishes three criteria that must be met for certification by the court: "the district court must be 'of the opinion that' (1) the order 'involves a controlling question of law'; (2) 'there is substantial ground for difference of opinion'; and (3) certification will 'materially advance the ultimate termination of the litigation.' " *Id.* at 377.

*Moland,* 994 F.Supp. at 1077.

The court is of the opinion that this decision presents an "exceptional case" in which immediate interlocutory appeal should be permitted. *Id.* First, this ruling "involves a controlling question of law," or at the very least, a mixed question of law and fact, which is whether the arbitration clause in Faber's employment agreement with Menard is unconscionable. Second, notwithstanding this court's certainty concerning the appropriate outcome, "there is substantial ground for difference of opinion," *id.,* where neither the Iowa Supreme Court nor the Iowa Court of Appeals has specifically addressed whether cost- or fee-splitting provisions of the kind in Faber's employment contract render an arbitration clause unconscionable in light of the Iowa standard for substantive uncon-

scionability. Finally, certification will "materially advance the ultimate termination of the litigation," because a ruling on the interlocutory appeal will either require arbitration, and thus require dismissal or a stay of the present judicial proceedings, or require that this matter proceed directly to judicial determination without the potential for a post-trial appeal of the order denying Menard's motion to compel arbitration.

This matter will, therefore, be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the following questions:

(1) Do provisions of an arbitration clause in a contract between an employee and an employer that require the employee to bear his or her own costs and attorney fees in arbitration and half the costs of the arbitrator necessarily or potentially render the arbitration clause unconscionable under Iowa law?

(2) If so, do the costs and fees of arbitration imposed upon the plaintiff here render this arbitration clause unconscionable?

(3) If the challenged provisions of the arbitration clause are unconscionable, do they require extirpation of the arbitration clause as a whole or can the arbitration clause be partially enforced to the extent of its "conscionable" provisions?

### III. CONCLUSION

Upon the foregoing, Menard's May 7, 2003, Motion To Compel Arbitration And Stay Proceedings (docket no. 4) is **denied in its entirety**. The arbitration clause of Faber's February 25, 2000, employment agreement is both procedurally and substantively unconscionable. The court declines to sever the unconscionable provisions of the arbitration clause, because

those unconscionable provisions, which allocate fees and costs of the arbitration to the parties, are central to the purpose of the arbitration clause and the arbitration scheme as conceived in the contract. Therefore, the arbitration clause is unenforceable in its entirety.

However, **this matter is certified for interlocutory appeal** pursuant to 28 U.S.C. § 1292(b) on the questions stated above in section II.C.

**IT IS SO ORDERED.**